# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA
## WESTERN DIVISION

| | | |
|---|---|---|
| STATE OF NORTH DAKOTA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:21-cv-00148-DMT-CRH |
| | ) | |
| THE UNITED STATES DEPARTMENT OF | ) | |
| INTERIOR; DEBRA ANN HAALAND, in her | ) | |
| official capacity as Secretary of Interior; THE | ) | |
| BUREAU OF LAND MANAGEMENT; | | |
| NADA CULVER, in her official capacity as | | |
| acting Director of the Bureau of Land | | |
| Management; and JOHN MEHLHOFF, in his | | |
| official capacity as the acting Director of the | | |
| Montana-Dakotas Bureau of Land Management | | |
| | | |
| Defendants. | | |

---

## MEMORANDUM IN SUPPORT OF
## MOTION FOR IMMEDIATE MANDAMUS RELIEF

---

The State of North Dakota ("State" or "North Dakota") respectfully submits this Memorandum in Support of its Motion for Immediate Mandamus Relief ("Motion") under 28 U.S.C. § 1361 and the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA") against Federal Defendants the United States Department of Interior, Debra Ann Haaland, in her official capacity as the Secretary of the Interior ("Secretary"), and the Bureau of Land Management ("BLM"), Nada Culver, in her official capacity as acting Director of the BLM, and John Mehlhoff, in his official capacity as the acting Director of the Montana-Dakotas BLM (collectively "Federal Defendants").

**INTRODUCTION**

North Dakota requests that this Court issue an order providing mandamus relief to North Dakota compelling the Federal Defendants to comply with their statutory obligations to hold quarterly oil and gas lease sales for public lands and also to comply with the nationwide preliminary injunction issued by the Federal District Court for the Western District of Louisiana enjoining the Federal Defendants from continuing their unilateral cancellation of the quarterly lease sales mandated by statute.

The Mineral Leasing Act ("MLA") requires that oil and gas "[l]ease sales **shall** be held . . . **at least quarterly** and more frequently if the Secretary of the Interior determines such sales are necessary." 30 U.S.C. § 226(b)(1)(A) (emphasis added).  Historically, the Federal Defendants have met this statutory requirement in North Dakota by holding four lease sales a year, with the sales typically taking place in March, June, September, and December.

The mandatory requirement to conduct these quarterly lease sales is further memorialized in mandatory land resource management plans ("RMPs") specific to North Dakota, that are developed under the Federal Land Policy Management Act ("FLPMA").  42 U.S.C. §§ 1701 *et seq.*  FLPMA imposes non-discretionary duties on the Federal Defendants, including mandating that the Federal Defendants act consistent with RMPs, and requiring that changes to an RMP (such as withdrawing lands available for leasing under the public domain) must undergo a public notice and comment process.  *See* 43 U.S.C. § 1714; *see also* 43 C.F.R. §§ 1610.1-1610.8.

The National Environmental Policy Act ("NEPA"), 42 U.S.C. §4321 *et seq.*, imposes non-discretionary duties on the Federal Defendants when it takes "major actions," including requiring that Federal Defendants consider the environmental consequences of the cancellation of quarterly lease sales in the Montana/Dakotas regions, and provide the public, including North Dakota, notice

and opportunity to comment on the environmental consequences of any such action.  Similarly, the APA, 5 U.S.C. § 551 *et seq.*, imposes non-discretionary duties on the Federal Defendants, including requiring that the Federal Defendants provide a reasoned explanation for any "agency action" that results in a change or modification to existing RMPs.  *See* 5 U.S.C. § 551(13) ("'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.").

On January 27, 2021 President Biden issued Executive Order 14008, *Tackling the Climate Crisis at Home and Abroad*, which provides in § 206 that "**[t]o the extent consistent with applicable law**, the Secretary of the Interior shall pause new oil and natural gas leases on public lands or in offshore waters pending completion of a comprehensive review . . ."  86 Fed. Reg. 7619, at 7624 (Feb. 1, 2021) ("Executive Order 14008") (emphasis added).  Despite the mandatory requirements of the MLA, FLPMA, NEPA, and APA, and ignoring Executive Order 14008's admonition to act consistent with applicable law, the Federal Defendants' have cancelled the statutorily mandated quarterly lease sales for March and June in 2021, and have further indicated that they intend to continue to cancel lease sales at least through 2021 (including, at minimum, the September lease sale) for an indefinite future period.

Federal Defendants have also thus far refused to comply with the nationwide preliminary injunction Order issued by the United States District Court of the Western District of Louisiana ("Louisiana Court") which enjoined the same Federal Defendants as are present in this case from cancelling any future quarterly oil and gas leases (including the September and December leases that would otherwise occur in 2021).

Federal Defendants' arbitrary cancellation of the statutorily mandated quarterly lease sales has already caused great harm to North Dakota and its citizens, and Federal Defendants' continuing

failure to comply with both the law and the Federal District Court's preliminary injunction will only increase that harm. North Dakota is the nation's second largest oil and gas producer. North Dakota produces over 500,000,000 barrels of oil per year ("bbl") and over 900,000,000 million cubic feet ("mmcf") of natural gas per year. Complaint, ECF No. 1, ¶ 9. Of those annual volumes, approximately 161 million bbl and 205 million mcf of natural gas are produced by mineral interests on federal and Indian lands located in the State. *Id.* Over fifty percent of North Dakota's general fund revenues are derived directly from oil and gas taxes, and sixty-six percent of the total of all tax and fee revenue received by the State comes from oil and gas extraction and production taxes. *Id.*, ¶ 10. Pursuant to the MLA, North Dakota receives 48 percent of the bonuses, production royalties, and other revenues from oil and gas leasing on federal lands. These funds are statutorily mandated to be paid to North Dakota under the MLA as a part of the quarterly leasing obligations of the Federal Defendants. *Id.*, ¶ 14; *see also* 30 U.S.C. § 191(a) & (b). In 2019, these federal payments added up to $93.65 million. *Id.* Federal mineral leasing revenues distributed to North Dakota support public schools, highways, local governments, and the State's budget reserve account. *Id.* The Federal Defendants' unilateral and unlawful cancellation of the March and June quarterly lease sales have already cost North Dakota and its citizens over $82 million. *Id.*, ¶ 53.

These harms are exacerbated in North Dakota due to the unique "split estate" arrangement in the state, whereby State and private mineral interests are frequently pooled with federal interests, and with all the mineral interests jointly managed through binding agreements. *Id.*, ¶ 16. Unlike many Western States with large blocks of land where the federal government owns both the surface and mineral estates, more than 97% of the surface and mineral estates in North Dakota were once owned either by the State or private interests as a result of the Congressional railroad and homestead acts of the late 1800s. *Id.*, ¶ 17. This separation of federal mineral ownership from

private/State surface ownership created North Dakota's unique "split estate" situation, with federal mineral interests impinging on over 30% of the spacing units in the State, creating a checkerboard of lands with private or state surface ownership and a mix of federal, state, and private mineral ownership. *Id.*, ¶ 19.  This means that any refusal by Federal Defendants to lease federal mineral interests that are a part of a spacing unit impairs the non-federal mineral interests in that spacing unit, particularly if the federal, State, and private mineral interests have been pooled, subjecting the non-federal mineral interest development to Communitization Agreements. *Id.,* ¶ 16.  North Dakota therefore has a vested interest in the Federal Defendants adhering to their statutory obligations under the MLA because the Federal Defendants' cancellation of lease sales of federal lands also impairs the development of State and private mineral interests.  This circumstance compounds North Dakota's injuries directly tied to the Federal Defendants' cancellation of quarterly oil and gas lease sales.

Because the Federal Defendants are disregarding their mandatory statutory obligations under the MLA, FLPMA, NEPA, and APA, and are failing to comply with an existing nationwide preliminary injunction Order, this Motion is both appropriate and necessary to protect North Dakota's interests in requiring the Federal Defendants to hold the previously cancelled quarterly oil and gas leases, and ensure that those quarterly oil and gas leases continue into the future up to and until the Federal Defendants comply with their statutory obligations.

## MATERIAL FACTS

The background of this action is more fully set forth in North Dakota's Complaint.  ECF No. 1, at ¶¶ 9-58.

### I.    PROCEDURAL BACKGROUND.

North Dakota filed its Complaint in this action on July 7, 2021 (ECF No. 1), seeking to hold Federal Defendants accountable for their failure to comply with their statutory duty by cancelling quarterly lease sales.  Separately, three actions have been filed by other State and industry plaintiffs in the Wyoming and Louisiana federal district courts.  *See State of Wyoming v. the United States Department of Interior, et al.*, 21-cv-56 (D. Wy.) (the "Wyoming Action"); *State of Louisiana et al. v. Joseph R. Biden, Jr. et al.*, 2:21−CV−00778 (W.D. Li.) (the "Louisiana Action"); *American Petroleum Institute et al., v. United States Department of Interior et al.*, 2:21-cv-02506 (W.D. Li.) (the "Industry Action").  In the Louisiana Action, the court issued a nationwide preliminary injunction Order against the Federal Defendants on June 15, 2021, which "hereby **ENJOINED** and **RESTRAINED**" the Federal Defendants from cancelling any further "oil and natural gas leases on public lands or in offshore waters . . . as to all eligible lands."  *State of Louisiana et al. v. Joseph R. Biden, Jr. et al.*, 2:21−CV−00778, ECF No.140, at 1 (Order Granting Motion for Preliminary Injunction) (emphasis in original) (**Exhibit 1**, hereto); *see also* Memorandum Ruling, ECF No. 139, at page 43 ("the scope of this injunction shall be nationwide. (**Exhibit 2**, hereto).  The preliminary injunction Order does not require Federal Defendants to hold the cancelled March and June quarterly oil and gas lease sales in North Dakota.

Despite the standing preliminary injunction Order, the Federal Defendants have yet to hold any lease sales in 2021.  On August 8, 2021, the plaintiffs in the Louisiana Action filed a Motion for Order to Show Cause requesting that the Louisiana Court issue an order "to show cause why

they should not be held in contempt for violating the Court's Preliminary Injunction Order and for an order directing Defendants to hold Lease Sale 257." *State of Louisiana et al. v. Joseph R. Biden, Jr. et al.*, 2:21−CV−00778, ECF No. 149, at 1 (Motion for Order to Show Cause and to Compel Compliance with Preliminary Injunction). The Federal Defendants' response to Motion for Order to Show Cause is due on August 24, 2021. *Id.*, ECF No. 150 (Minute Entry setting out response timelines). On August 16, 2021, the Federal Defendants filed a Notice of Appeal as to the Order on Motion for Preliminary Injunction, appealing the Order to the Fifth Circuit. *Id.*, ECF No. 152 (Notice of Appeal).

On the same day, the Federal Defendants issued a press release regarding their decision to appeal the preliminary injunction Order in the Louisiana action, noting cryptically that the "Interior will proceed with leasing consistent with the district court's injunction during the appeal. In complying with the district court's mandate, Interior will continue to exercise the authority and discretion provided under the law to conduct leasing in a manner that takes into account the program's many deficiencies." Interior Issues Statement on Oil and Gas Leasing Program (August 16, 2021) (available at: https://www.doi.gov/pressreleases/interior-issues-statement-oil-and-gas-leasing-program). Given that the Federal Defendants have yet to notice any quarterly lease sale in 2021, it is unclear to what extent the quarterly oil and gas lease sales will be resumed. Further, the Federal Defendants' press release gives no indication as to whether the previously cancelled lease sales, including the previously noticed March and June lease sales in North Dakota, will be held.

Separately, in the Wyoming action, the plaintiffs also sought a preliminary injunction, which the District Court dismissed as moot due to the existing nationwide preliminary injunction issued in the Louisiana Action. *State of Wyoming v. the United States Department of Interior, et al.*, 21-cv-56, at ECF No. 71 (Order Dismissing as Moot Without Prejudice Motion for Preliminary

Injunction) (**Exhibit 3**, hereto).  In the Order, the District Court acknowledged that federal courts have authority to grant nationwide injunctions, and noted that since there was a standing nationwide preliminary injunction Order issued in the Louisiana Action, consideration of an additional preliminary injunction "would be a duplication and uneconomical use of judicial resources" as the standing preliminary injunction "granted the bulk of Petitioners' requested relief." *Id.*, page 2.

Finally, on a recent call between the leadership of the BLM Montana/Dakotas office and constituents from North Dakota, BLM official affirmatively stated that they are cancelling lease sales at least through the end of calendar year 2021, notwithstanding the preliminary injunction Order issued in the Louisiana Action.  Congressional Record – Senate, Vol. 167, No. 140, S5926 (August 5, 2021) (**Exhibit 4**, hereto).  During the call Director (and Defendant in this action) John Mehloff stated that "at earliest" the BLM "would be able to hold an oil and gas lease sale late first quarter of 2022." *Id.*

## II.   FEDERAL DEFENDANTS' MANDATORY STATUTORY DUTIES.

The MLA, FLPMA, NEPA, and APA all impose mandatory duties on the Federal Defendants to (1) hold quarterly lease sales; (2) provide royalties generated from production on those lease sales to states such as North Dakota; (3) comply with current RMPs; (4) provide public notice and opportunity for comment before deviating from their statutory duties to hold mandatory lease sales and thus modify RMPs; (5) assess the environmental impacts of any "major federal actions" such as amending RMPs; and (6) give a reasoned explanation before deviating from quarterly lease sales and modifying RMPs.  These mandatory duties are owed to North Dakota, who as established above, has strong sovereign and economic interests in the Federal Defendants complying with their statutory duties for holding and continuing the quarterly lease sales.

### A.  The MLA Mandates that the Federal Defendants Hold Quarterly Oil and Gas Lease Sales.

The MLA requires that oil and gas "[l]ease sales **shall** be held for each State where eligible lands are available **at least quarterly** and more frequently if the Secretary of the Interior determines such sales are necessary." 30 U.S.C. § 226(b)(1)(A) (emphasis added).  The MLA further provides that for oil and natural gas leases on federal lands (which includes the mandated quarterly leases) 50 percent of bonuses, production royalties, and other revenues are granted to the State in which the lease is located, and 40 percent is granted to the Reclamation Fund, which maintains agricultural irrigation systems in several Western States, including North Dakota.[1]  30 U.S.C. §191(a).  North Dakota therefore has a vested statutory right under the MLA in the quarterly lease sales, both through its direct interest in the bonuses, production royalties, and other revenues which are statutorily granted to North Dakota from those lease sales, as well as its interest in the split-estate nature of leases in North Dakota.

BLM's own regulations also reiterate the statutory requirement for conducting quarterly lease sales and state that "[e]ach proper BLM Sate office **shall** hold sales **at least quarterly** if lands are available for competitive leasing." 43 C.F.R. § 3120.1–2 (emphasis added).  BLM state offices are in charge of identifying which specific parcels to offer for lease in a competitive lease sale.  *See* 43 C.F.R. Subpart 3120.  Lands available for leasing "shall be offered for competitive bidding" and include, but are not limited to, "[l]ands included in any expression of interest." 43 C.F.R. § 3120.1-1(e).

---

[1] Section 1 of the Reclamation Act of June 17, 1902 allocates funds to "California, Colorado, Idaho, Kansas, Montana, Nebraska, Nevada, New Mexico, **North Dakota**, Oklahoma, Oregon, South Dakota, Utah, Washington, and Wyoming" for the "construction and maintenance of irrigation works for the storage, diversion, and development of waters for the reclamation of arid and semiarid lands in the said States and Territories."  (Emphasis added)

BLM regulations further require that the lands available for a lease sale "shall be described in a Notice of Competitive Lease Sale" (43 C.F.R. § 3120.4–1), which notice "shall be posted" at least "45 days prior to conduction" (43 C.F.R. § 3120.4–2) of the lease sale.  Typically, the BLM Montana/Dakotas Office posts those notices well before the 45-day deadline.  *See* Complaint, ¶ 34.  Once the BLM posts notice of a lease sale, the BLM allows for a 30-day protest period. *See* BLM Manual 3120 at .5(.53). If protests are not resolved before leasing, BLM can still accept bids for protested parcels at auction.  *Id*.

BLM, without formal notice or explanation, cancelled the sales scheduled for March and June 2021, and has not provided the 45-day notice required by its own regulations for the September sales, indicating that BLM is also, again without explicit public notice, is canceling the September sale in North Dakota.  At a more general national level, BLM has stated that it is cancelling all lease sales at least through the end of 2021.  *See* **Exhibit 4,** Congressional Record – Senate, Vol. 167, No. 140, S5926 (August 5, 2021).

### B. FLPMA Mandates that the Federal Defendants Provide for Notice and Comment Prior to Modifying North Dakota's Existing RMP.

Under FLPMA, the Secretary is required to "develop, maintain, and, when appropriate, revise land use plans which provide … for the use of public lands." 43 U.S.C. § 1712(a).  The Secretary's land use planning objectives are adopted in RMPs, which are prepared and maintained by BLM state offices following public input. See 43 U.S.C. § 1712(a); 43 C.F.R. § 1610.1(b). FLPMA prohibits the Secretary from acting inconsistent with RMPs.  *See Norton v. S. Utah Wilderness All*., 542 U.S. 55, 69 (2004); 43 U.S.C. § 1732(a) ("The Secretary shall manage the public lands … in accordance with the land use plans developed by him[.]"); 43 C.F.R. § 1610.5-3 ("All future resource management authorizations and actions … shall conform to the approved plan.").

Similarly, FLPMA imposes detailed procedural requirements on any substantial change in land management policy. *See, e.g.,* 43 U.S.C. §§ 1739(e); 1712(f); & 1714(h).  This includes specific and express limitations on the authority of the Secretary to withdraw lands from leasing. 43 U.S.C. § 1714 ("[T]he Secretary is authorized to make, modify, extend, or revoke withdrawals but only in accordance with the provisions and limitations of this section.").  A "withdrawal" of lands from an RMP under FLPMA is defined as "withholding an area of Federal land from settlement, **sale**, location, or entry, under some or all of the general land laws, for the purpose of limiting activities under those laws . . ." 43 U.S.C. § 1702(j) (emphasis added).  Therefore, the Secretary may only depart from an existing RMP after complying with a formal land use amendment process that includes public participation. *See* 43 U.S.C. § 1714(h) ("All new withdrawals made by the Secretary under this section (except an emergency withdrawal made under subsection (e) of this section) shall be promulgated after an opportunity for a public hearing."); *see also* 43 C.F.R. §§ 1610.1-1610.8.

The closure of all federal mineral interests in North Dakota to oil and gas leasing is not provided for in the current North Dakota Resource Management Plan ("North Dakota RMP"), which specifies that hundreds of thousands of acres are available for oil and gas leasing in North Dakota.  *See* North Dakota Resource Management Plan and Environmental Impact Statement, Record of Decision (April 1988), available at https://eplanning.blm.gov/public_projects/lup/68341/101098/123142/rod.pdf).[2]    Federal

---

[2] The BLM issued a notice of a North Dakota RMP Revision and EIS on April 14, 2020, which was last updated on November 3, 2020.  That notice did not include a withdrawal of all federal lands in North Dakota from the leasing program.  The BLM has not noticed any changes in 2021 that would affect the conclusion that lands are available for leasing in North Dakota.  *See* North Dakota Resource Management Plan Revision and EIS (available at https://eplanning.blm.gov/eplanning-ui/project/1505069/510).

Defendants' decision to cancel the statutorily-mandated lease sales and thus withdraw the federal lands available for lease under the North Dakota RMP for leasing violates the North Dakota RMP, and the requirements of FLPMA.  At no time has BLM, as required by statute, proposed and made available for public comment any changes to the North Dakota RMP withdrawing all federal lands in the State from the leasing program for any period of time.

### C. NEPA Mandates that the Federal Defendants Prepare an Environmental Assessment Prior to Amending the North Dakota RMP.

NEPA prescribes a set of "action -forcing" measures that require federal agencies to take a "hard look" at the environmental consequences of major federal actions before they are taken. *Sierra Club v. U.S. Army Corps of Engineers*, 446 F.3d 808, 815 (8th Cir. 2006).  NEPA therefore imposes "procedural requirements on federal agencies with a particular focus on requiring agencies to undertake analyses of the environmental impact of their proposals and actions." *Department of Transportation v. Public Citizen,* 541 U.S. 752, 756 (2004).  NEPA requires federal agencies to prepare an environmental impact statement ("EIS") prior to taking "major federal actions significantly affecting the quality of the human environment."  42 U.S.C. § 4332(2)(C). RMP amendments are "major federal actions" with potential environmental impacts that must also be assessed under NEPA, 42 U.S.C. § 4332(2)(C).  *See Norton*, 542 U.S. at 72 ("BLM *is* required to perform additional NEPA analyses if a [land use] plan is amended or revised." (emphasis in original)); *New Mexico ex rel. Richardson v. BLM*, 565 F.3d 683, 689 (10th Cir. 2009) ("Amending a resource management plan is a 'major federal action' whose potential environmental impacts must be assessed under NEPA.").

"Injury under NEPA occurs when an agency fails to comply with that statute," such as failing to issue a required EIS. *Sierra Club*, 446 F.3d at 816.  The injury-in-fact is increased risk of environmental harm stemming from the agency's allegedly uninformed decision-making.  *Id.*

The North Dakota RMP was, as required by law, developed and finalized through the public notice and comment process and was accompanied by an environmental assessment. The Federal Defendants cannot lawfully amend the North Dakota RMP, which provides that lands are "available for lease" in the State, without engaging in the same notice and comment process through which the RMP was adopted and providing an environmental assessment of the impact of the proposed amendment. However, that is precisely what they did here without complying with NEPA.

### D. The APA Requires Federal Defendants to Provide a Reasoned Explanation for Cancelling Quarterly Lease Sales and Modifying RMPs.

The APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion." 5 U.S.C. §706(2)(A). Reasoned decision-making requires an agency, when departing from precedents or practices, to "offer a reason to distinguish them or explain its apparent rejection of their approach." *Sw. Airlines v. FERC*, 926 F.3d 851, 856 (D.C. Cir. 2019) (internal quotation marks and citation omitted).

"Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016). "In explaining its changed position, an agency must also be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" *Id.* at 2126 (quoting *F.C.C. v. Fox Television Stations*, 556 U.S. 502, 515 (2009)). An agency provides a reasoned explanation for a policy change where it (1) displays "awareness that it *is* changing position," (2) shows the new policy is "permissible under the statute," (3) shows there are "good reasons for the new policy," and (4) shows "the agency *believes* [the new policy] to be better." *F.C.C. v. Fox Television Stations*, 556 U.S. at 515 (emphasis in original). When an agency's new policy "rests upon factual findings that contradict those which underlay its prior policy[,] or when

its prior policy has engendered serious reliance interests that must be taken into account," the agency must "provide a more detailed justification than what would suffice for a new policy created on a blank slate." *Id.* "In such cases it is not that further justification is demanded by the mere fact of policy change; but that a reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy." *Id.* at 515-16; *see also Encino Motorcars,* 136 S. Ct. at 2125-26.

The Federal Defendants have not provided **any** explanation for reversing the longstanding practice of holding quarterly oil and gas lease sales.  Nor have they provided **any** explanation for amending the North Dakota RMP which provides that lands are "available for lease" in the State. At a minimum the Federal Defendants were required to explain how the cancellation of quarterly oil and gas lease sales and effective amendment to the North Dakota RMP are "permissible under the [MLA and FLPMA]." *F.C.C. v. Fox Television Stations, Inc.,* 556 U.S. at 515.

### E.  The APA Vests this Court with Authority to Compel the Federal Defendants to Hold Quarterly Lease Sales.

The APA provides that the reviewing court shall compel agency action unlawfully withheld or unreasonably delayed.  5 U.S.C. 706(1).  The Supreme Court has held that a "failure to act" includes failure to take one of the agency actions defined in 5 U.S.C. § 551(13).  *Norton*, 542 U.S. at 62-63 (noting that a failure to act includes, "for example, the failure to promulgate a rule or **take some decision by a statutory deadline**." (emphasis added)).  Here, the Federal Defendants have failed to hold (and indeed affirmatively cancelled) **any** statutorily mandated quarterly lease sales in 2021.

### III.  THE FEDERAL DEFENDANTS' CANCELLATION OF QUARTERLY OIL AND GAS LEASE SALES.

#### A.  Federal Defendants' Unlawful Actions Surrounding Executive Order 14008.

Prior to President Biden issuing Executive Order 14008, then acting Secretary of Interior Scott de la Vega issued Secretarial Order 3395 which temporarily removed authority for individual state BLM offices and other bureaus to "issue any onshore or offshore fossil fuel authorization, including not limited to a lease, amendment to a lease, affirmative extension of a lease, contracts, or other agreement, or permit to drill." U.S. Dep't of Interior, Secretarial Order 3395, Temporary Suspension of Delegated Authority at § 3 (Jan. 20, 2021) (available at https://www.doi.gov/sites/doi.gov/files/elips/documents/so-3395-signed.pdf).   By acting seven days before Executive Order 14008 was released, the acting Secretary initiated Federal Defendants' actions for cancelling quarterly oil and gas lease sales in violation of the Federal Defendants' statutory duties under the MLA, APA, FLPMA, and NEPA.  Federal Defendants' actions were undertaken without any opportunity for North Dakota to participate via the statutorily mandated public notice and comment process.

The January 27, 2021 Executive Order 14008 directed the Secretary, consistent with applicable law, to evaluate a **potential** "pause" of new oil and gas leasing on public lands:

> **To the extent consistent with applicable law**, the Secretary of the Interior shall pause new oil and natural gas leases on public lands or in offshore waters **pending completion of a comprehensive review** and reconsideration of Federal oil and gas permitting and leasing practices in light of the Secretary of the Interior's broad stewardship responsibilities over the public lands and in offshore waters, including potential climate and other impacts associated with oil and gas activities on public lands or in offshore waters.

86 Fed. Reg. at 7624-25 (emphasis added).

Executive Order 14008 did not direct the Secretary to indefinitely **cancel** new oil and natural gas lease sales in violation of federal law **prior to** completion of the "comprehensive review" mandated by FLPMA and NEPA, or prior to provide a reasoned explanation for such change as

mandated by the APA.  Instead, Executive Order 14008 further provides that, in conducting the

"comprehensive review", the Secretary:

> **shall complete that review in consultation with** the Secretary of Agriculture, the
> Secretary of Commerce, through the National Oceanic and Atmospheric
> Administration, and the Secretary of Energy.  In conducting this analysis, **and to
> the extent consistent with applicable law**, the Secretary of the Interior shall
> consider whether to adjust royalties associated with coal, oil, and gas resources
> extracted from public lands and offshore waters, or take other appropriate action,
> to account for corresponding climate costs.

*Id.* at 7625 (emphasis added).

After Executive Order 14008 was issued, then acting Secretary Scott de la Vega promptly

(through Secretarial Order 3395 and regional BLM offices) **cancelled** (not paused) all quarterly

oil and gas lease sales scheduled for 2021.  Specific to this action, on February 12, 2021, the

Montana/Dakotas BLM State Office updated the posting for the March 23, 2021 lease sale to

indicate that the scheduled sale was "paused" and/or "postponed," adhering to the direction of

acting Secretary Scott de la Vega since the authority of the Montana/Dakotas to issue any lease

sale was suspended by Secretarial Order 3395.  *See* BLM National NEPA Register, 2021 March

Oil and Gas Lease Sale for the Montana State office (available at

https://eplanning.blm.gov/eplanning-ui/project/2002224/510).   Despite the BLM's National

NEPA Register page listing notice and protest deadlines for several other aspects of the  March

and June lease sales, including comment and protest periods for the previously issued notices of

lease sale, there was **no** protest or comment period listed for the decision to cancel the March lease

sale. *See id.*

Federal Defendant Secretary of Interior Deb Haaland was confirmed by the United States

Senate and sworn into office on March 16, 2021.  Press Release, Statement from Deb Haaland on

Becoming the 54th Interior Secretary (Mar. 16, 2021) (available at

https://www.doi.gov/news/statement-deb-haaland-becoming-54th-interior-secretary).   On March

19, 2021, senior Department of Interior officials clarified that, going forward, all oil and gas lease

sale notices required review by the Office of the Assistant Secretary for Land and Minerals

Management.   Memorandum from Laura Daniel-Davis, Principal Deputy Assistant Secretary –

Land and Minerals Management, to Bureau Directors (BLM, OSMRE, BSEE, BOEM) at 1-2

(Mar. 19, 2021) (available at https://www.eenews.net/assets/2021/03/23/document_gw_02.pdf).

Similarly, on April 21, 2021, the BLM issued a public announcement stating that "the Bureau of

Land Management is exercising its discretion to not hold lease sales in the second quarter of

Calendar Year 2021."   BLM Statement on Second Quarter Oil and Gas Lease Sales (available at

https://www.blm.gov/press-release/statement-second-quarter-oil-and-gas-lease-sales).   The public

announcement noted that BLM was conducting an "ongoing review" of its decision to cancel

quarterly lease sales, but provided no public *Federal Register* notice of the cancellation or review,

and no opportunity for interested stakeholders such as North Dakota to comment on the

cancellation or review.

To date, the Federal Defendants have not published a public notice in the *Federal Register*

explaining or offering the public, including North Dakota, an opportunity to comment on, the

official cancellation of the 2021 quarterly lease sales.   Nor have the Federal Defendants published

a notice in the *Federal Register* proposing changes to the North Dakota RMP reflecting Federal

Defendants' withdrawal from the North Dakota any federal lands for lease sales.   While the Federal

Defendants issued a press release on August 16, 2021 saying that they would "proceed with leasing

consistent with the" preliminary injunction Order issued in the Louisiana action, they have yet to

notice **any** quarterly oil and gas lease sales in 2021, despite the preliminary injunction Order

having been issued over two months ago, on June 15, 2021.   *See* Interior Issues Statement on Oil

and       Gas       Leasing       Program       (August       16,       2021)       (available       at:

https://www.doi.gov/pressreleases/interior-issues-statement-oil-and-gas-leasing-program).

> **B. Federal Parcels are Available for Leasing in North Dakota and Federal Defendants Continue to Violate Their Statutory Duty to Hold Quarterly Leases Under the MLA.**

To date, BLM has cancelled, and thus failed to hold, any quarterly lease sales in 2021

**despite the availability of parcels for leasing in North Dakota**.  For example, there were

quarterly lease sales scheduled for both March and June 2021 for the BLM region that includes

North Dakota.  *See* Complaint, ¶¶ 35-43 (Noting that there are 811 pending nominated tracts in

North Dakota, of which 245 tracts have fully completed the administrative nomination process

(including the NEPA review process) and thus are available for leasing, of which nine were already

formally scheduled for sale, six in March of 2021 and three in June of 2021); *see also*

https://eplanning.blm.gov/eplanning-ui/project/2002224/510 (noting nominated parcels that have

completed the notice and protest period).  These lease sales were cancelled.

Rather than engaging in the process mandated by the MLA, FLPMA, NEPA, and APA

which all require that North Dakota be afforded the opportunity to comment on a proposed plan to

cancel lease sales, Federal Defendants released a "fact sheet" on their website claiming that

Executive Order 14008 directed Federal Defendants to "pause new oil and natural gas leasing on

public lands and offshore waters, concurrent with a comprehensive review of the federal oil and

gas program."  *See* BLM, Fact Sheet: President Biden to Take Action to Uphold Commitment to

Restore Balance on Public Lands and Waters, Invest in Clean Energy Future (Jan. 27, 2021),

https://www.blm.gov/press-release/fact-sheet-president-biden-take-action-uphold-commitment-

restore-balance-public-lands.  The Federal Defendants' "fact sheet" ignored Executive Order

14008's mandate to act consistent with law, and the Federal Defendants have yet to engage

stakeholders such as North Dakota in any of the statutorily mandated notice and comment processes that must precede a cancellation of the statutorily required quarterly lease sales, or a modification of the North Dakota RMP to withdraw federal lands available for leasing.

No formal cancellation notice was released for the June 2021 lease sale, and that sale was cancelled.   To hold a quarterly lease sale by the next regular sale in September of this year, BLM was required by its own regulations to post its Notice of Competitive Lease Sale no later than August 15, 2021 (45 days before the end of September).  No such notice has been posted as of the filing of this Motion – and Federal Defendants have therefore constructively cancelled the September lease sale as they cannot comply with the 45-day statutory notice period and still hold a lease sale in September.  Further, the Federal Defendants have indicated they do not plan to hold **any** quarterly lease sales in 2021.  *See* **Exhibit 4,** Congressional Record – Senate, Vol. 167, No. 140, S5926 (August 5, 2021).

The Federal Defendants therefore continue to demonstrate (both through action and inaction) that they are not complying and **do not** intend to comply with their non-discrete statutory duties under the MLA, FLPMA, NEPA, and APA to hold quarterly oil and gas lease sales, nor the nationwide preliminary injunction Order issued in the Louisiana Action.

At every level of communication, North Dakota has urged Federal Defendants to continue with the required quarterly lease sales, but has yet to hear any clear indication from BLM officials (or any other Federal Defendants) that any Dakotas/Montana quarterly lease sale will be held this year.  And, while the Federal Defendants have recently indicated that they plan to "proceed with leasing consistent with the" preliminary injunction Order in the Louisiana Action, they have given no timeline for that compliance over two months after the Order was issued.  Further, they hedge that commitment by noting that they will only "conduct leasing in a manner that takes into account

the [leasing] program's many deficiencies."   Regardless, if the Federal Defendants wish to revise the quarterly oil and gas leasing program consistent with the unspecified "deficiencies" in the program, the correct avenue for doing so is **after** providing for public notice and comment on the alleged deficiencies, and not by administrative fiat cancelling all 2021 quarterly oil and gas lease sales without opportunity for any public participation.   Thus, in addition to violating the law, the Federal Defendants are also actively failing to comply with a Federal court injunction.

## ARGUMENT

I.   **THE NATIONWIDE PRELIMINARY INJUNCTION APPLIES TO LEASE SALES IN NORTH DAKOTA.**

The mandate of the preliminary injunction Order issued by District Court for the District of Louisiana court runs throughout the United States – including in the State of North Dakota. *Leman v. Krentler-Arnold Co.*, 284 U.S. 448, 451 (1932) (the decree was binding upon the respondent, not simply within the District . . . but throughout the United States."). When injunctions are nationwide in scope, they properly limit the defendants conduct throughout the country. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2924 n.1 (Thomas, concurring, noting that nationwide "injunctions are distinctive because they prohibit the Government from enforcing a policy with respect to anyone, including nonparties.").[3]

The Louisiana Action includes the same Federal Defendants common to this action, including Debra Haaland, in her official capacity as the Secretary, and John Mehlhoff, in his official capacity as the Director for the BLM Montana-Dakotas Office.[4]   The preliminary

---

[3] The nationwide injunction at issue in *Trump v. Hawaii* was eventually invalidated on the grounds that the plaintiffs had not demonstrated a likelihood of success on their claims.

[4] The Louisiana Action also includes President Joseph R. Biden, Jr.; Michael Nedd , in his official capacity as the Deputy Director of the BLM; the BLM Directors for the various other BLM Offices of the plaintiffs to that action, including the Arizona, California, Colorado, Eastern States, Idaho,

injunction Order issued in the Louisiana Action states that it is as enforceable against "[t]he United States Department of the Interior, Deb Haaland, Secretary of the Department of Interior, the United States Bureau of Land Management, Michael Nedd, Deputy Director of the Bureau of Land Management, . . . the United States Bureau of Ocean Energy Management, . . . the United States Bureau of Safety and Environmental Enforcement, . . . **and all their respective officers, agents, servants, employees, attorneys and all other persons who are in active consent [sic] or participation with the above** . . ." **Exhibit 1**, Order Granting Motion for Preliminary Injunction, at 1 (emphasis added).

When a federal court of equity grants relief by way of injunction it has a responsibility to protect all the interests whom its injunction may affect. *Inland Steel Co. v. United States*, 306 U.S. 153 (1939). North Dakota is clearly a beneficiary of the Order issued by the District Court for the District of Louisiana, which stated that:

> "This Court does not favor nationwide injunctions unless absolutely necessary. However, it is necessary here because of the need for uniformity. *Texas*, 809 F.3d at 187–88. The Agency Defendants' lease sales are located on public lands and in offshore waters across the nation. Uniformity is needed despite this Court's reluctance to issue a nationwide injunction. Therefore, the scope of this injunction shall be nationwide.

**Exhibit 2**, Memorandum Ruling, at pages 42-43.

The subject matter of the Louisiana Action and preliminary injunction is also the same as the subject matter of this case: the unlawful and arbitrary cancellation by the Federal Defendants of quarterly lease sales. Therefore, the Louisiana Court's order enjoining the Federal Defendants to conduct quarterly lease sales also directs the Federal Defendants to conduct such sales in North Dakota.

---

Nevada, New Mexico, Oregon-Washington, Utah, and Wyoming offices, and various officials in the Bureau of Ocean Energy Management.

As of the date of the filing of this motion, the Federal Defendants appear to be defying the Louisiana Federal Court's preliminary injunction Order.  *See State of Louisiana et al. v. Joseph R. Biden, Jr. et al.*, 2:21−CV−00778, ECF No. 149, at 1 (Motion for Order to Show Cause and to Compel Compliance with Preliminary Injunction).  Federal Defendants have missed the deadlines for making the requisite regulatory filings necessary to conduct the statutorily mandated quarterly lease sale in September.  In conflicting messaging, the Federal Defendants have publicly stated that they do not intend to conduct any lease sales in 2021 (*see* **Exhibit 4**, Congressional Record – Senate, Vol. 167, No. 140, S5926 (August 5, 2021)), while also saying they would "proceed with leasing consistent with the district court's injunction during the appeal" of that very same injunction (*See* Interior Issues Statement on Oil and Gas Leasing Program (August 16, 2021) (available at:  https://www.doi.gov/pressreleases/interior-issues-statement-oil-and-gas-leasing-program).  The fact remains that to date, Federal Defendants have not noticed any quarterly oil and gas lease sales in 2021, including the previously cancelled March and June lease sales in North Dakota.

North Dakota brings the same essential causes of action against the Federal Defendants as were alleged in the Louisiana Action, and similarly has a high likelihood of success.  Further, as set forth in North Dakota's Complaint, North Dakota has been and continues to be irreparably injured by the Federal Defendants' continued cancellation of quarterly lease sales through the loss of bonuses, production royalties, and other revenues from oil and gas leasing on federal lands.  Complaint, ¶¶ 9-14,58 50-56 (noting the bonuses, production royalties, and other revenues North Dakota is being deprived of by cancelled lease sales, including detailing specific damages amounts attributable to the previously scheduled March and June lease sales); *id.*, ¶ 58 (noting the harms to

North Dakota's sovereign rights and authority to regulate, manage and develop the State's natural resources, including those owned by either State or private interests).

The unlawful cancellation of the March quarterly oil and gas lease sale has already cost North Dakota an estimated $470,000 loss in federal royalties, $1,601,000 of North Dakota Trust Lands and Missouri Riverbed royalties, $97,000 in in lost personal income tax from private royalties, and $1,140,000 in lost state sales taxes.  *See* Complaint, ¶ 51.  Similarly, cancellation of the June quarterly oil and gas lease sale will cost North Dakota an estimated $1.9 million of North Dakota Trust Lands royalties, federal royalties of $8.9 million of which North Dakota's lost share is $4.3 million, $17.3 million privately owned land royalties of which North Dakota's share of lost personal income tax would be $352,000, and $1.9 million in lost state sales tax.  *Id.* at ¶ 52.  Taken together, and adding lost sales and personal income taxes, the total loss to North Dakota from cancelling the March and June quarterly oil and gas lease sales is over $82 million.  These losses will be compounded by the cancelled September quarterly oil and gas lease sale.

These injuries and losses are further compounded by the unique "split estate" regime in North Dakota where federal mineral interests impinge on over 30% of the spacing units in the State, and any refusal by Federal Defendants to lease federal mineral interests that are a part of a "split-estate" spacing unit impairs the non-federal mineral interests in that spacing unit.  Federal Defendants' refusal to comply with their statutory duties to hold quarterly oil and gas lease sales therefore directly obstructs North Dakota's sovereign right to manage the state and private interests pooled with federal interests that were withheld from those quarterly sales.  *See Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1242 (10th Cir. 2008) ("States have a legally protected sovereign interest in the exercise of sovereign power over individuals and entities within the relevant jurisdiction, which involves the power to create and enforce a legal code." (citation and

internal quotations omitted)); *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Engineers*, 531 U.S. 159, 174 (2001) ("Regulation of land use is a function traditionally performed by local governments.").

## II.   MANDAMUS RELIEF IS AN APPROPRIATE REMEDY TO WHICH NORTH DAKOTA IS ENTITLED.

### A.   Standard for Compelling Agency Action.

Separate analyses determining whether the Court has jurisdiction under a mandamus action and/or the APA have been considered by other courts to be unnecessary because the two are coextensive. *Sharadanant v. Uscis*, 543 F. Supp. 2d 1071, 1075 (D.N.D. 2008). A district court may grant a writ of mandamus if: (1) "the defendant has a nondiscretionary duty to" take the actions the petitioner seeks to compel; (2) "the petitioner can establish a clear and indisputable right to the relief sought," and (3) the petitioner has no other adequate remedy." *Castillo v. Ridge,* 445 F.3d 1057, 1060 (8th Cir. 2006).

Similarly, to invoke jurisdiction under the APA, a party must show (1) the agency had a nondiscretionary duty to act and (2) the agency unreasonably delayed in acting on that duty. *Sharadanat*, 543 F. Supp. 2d, at 1075 (citing to *Qijuan Li v. Chertoff*, 2007 WL 2123740, *2 (D. Neb., July 19, 2007) (quoting *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63-65 (2004))). That is because the APA affords judicial review to persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute." 5 U.S.C. § 702. The APA provides relief not only from agency action taken, but also for "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The APA "empowers a court to compel an agency only to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing how it shall act." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (citation and quotation marks omitted). Further,

"[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

The MLA imposes discrete, non-discretionary obligations upon Federal Defendants to hold quarterly oil and gas lease sales.  To meet those non-discretionary duties, BLM must take certain discrete actions and must perform those actions within certain deadlines.  Further, the preliminary injunction issued in the Louisiana Action further mandates that Federal Defendants stop cancelling and renew quarterly oil and gas lease sales.  Separately, FLPMA, NEPA, and the APA require that Federal Defendants provide the opportunity for notice and comment prior to departing from the statutorily mandated quarterly oil and gas lease sales and amending the North Dakota RMP, including providing an environmental assessment of the impact of that deviation and a reasoned explanation for the amendment.

Federal Defendants' failure to carry out their mandatory duties, and their affirmative actions in cancelling the statutorily required quarterly lease sales, also constitute final agency actions under the APA, 5 U.S.C. §§ 551(13).  The Supreme Court has confirmed that a "failure to act" includes a failure take one of the agency actions defined in 5 U.S.C. § 551(13).  *Norton*, 542 U.S. at 62 (noting that agency action includes decisions made or outcomes implemented by an agency such as an agency rule, order, license, sanction, or relief).  "When agency recalcitrance is in the face of clear statutory duty or is of such a magnitude that it amounts to an abdication of statutory responsibility, the court has the power to order the agency to act to carry out its substantive statutory mandates." *Pub. Citizen Health Research Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 32 (D.C. Cir. 1984); s*ee also Marathon Oil Co. v. Lujan*, 937 F.2d 498, 500

(10th Cir. 1991) (holding that "[a]dministrative agencies do not possess the discretion to avoid discharging the duties that Congress intended them to perform").

Because Federal Defendants have failed to discharge mandatory duties that Congress requires, and that the Louisiana Court ordered in a nationwide preliminary injunction, this Court should award North Dakota mandamus relief and direct Federal Defendants to immediately hold quarterly lease sales, including remedying the unlawfully cancelled lease sales from March and June, pursuant to 30 U.S.C. § 226(b)(1)(A).

**B.   Federal Defendants Have Clear and Non-Discretionary Duties to Act.**

The MLA requires that oil and gas "[l]ease sales **shall** be held for each State where eligible lands are available **at least quarterly** and more frequently if the Secretary of the Interior determines such sales are necessary." 30 U.S.C. § 226(b)(1)(A) (emphasis added).  The plain language of 30 U.S.C. § 226(b)(1)(A) – assigning duties with the use of the word "shall" – confirms Federal Defendants clear obligation and discrete duty to hold the quarterly oil and gas lease sales under the MLA when lands are available for leasing.

"There is no question that [30 U.S.C. § 226] imposes mandatory duties on BLM, and that BLM failed to satisfy those duties in this case." *Brigham Oil & Gas*, *LP*, 181 IBLA 282, 286 (2011) (determining similar mandatory provisions in 30 U.S.C. § 226(p) impose nondiscretionary, mandatory obligations on BLM field offices).  Similarly, there is no question that the preliminary injunction Order issued by the District Court in the Louisiana Action also requires that Federal Defendants to hold quarterly lease sales.  **Exhibit 2**, at page 43 (Federal Defendants "are hereby ENJOINED and RESTRAINED from [cancelling] new oil and natural gas leases on public lands . . . as to all eligible lands.").

FLPMA imposes non-discretionary duties on Federal Defendants to provide for public notice and comment when modifying RMPs and withdrawing lands from the availability for leasing.  *See* 43 U.S.C. § 1714(h) ("All new withdrawals made by the Secretary under this section (except an emergency withdrawal made under subsection (e) of this section) **shall** be promulgated after an opportunity for a public hearing.") (emphasis added); *see also* 43 C.F.R. §§ 1610.1-1610.8.

The North Dakota RMP specifies that hundreds of thousands of acres are available for oil and gas leasing.  *See* North Dakota Resource Management Plan and Environmental Impact Statement, Record of Decision (April 1988), available at https://eplanning.blm.gov/public_projects/lup/68341/101098/123142/rod.pdf.   The Federal Defendants confirmed this fact by previously noticing the March and June 2021 lease sales.  The Federal Defendants may only depart from the North Dakota RMP and cancel those lease sales after complying with a formal land use amendment process that includes public participation under FLPMA – and they have failed to do so here.

NEPA imposes non-discretionary duties on Federal Defendants to assess the environmental impact of any "major federal actions," including modifying RMPs.  42 U.S.C. § 4332(2)(C); *Norton*, 542 U.S. at 72 ("BLM *is* required to perform additional NEPA analyses if a [land use] plan is amended or revised." (emphasis in original)); *New Mexico ex rel. Richardson v. BLM*, 565 F.3d 683, 689 (10th Cir. 2009) ("Amending a resource management plan is a 'major federal action' whose potential environmental impacts must be assessed under NEPA.").  Federal Defendants have not released any environmental assessment of their plan to deviate from and amend the North Dakota RMP, either through an EIS or otherwise.

Finally, the APA imposes non-discretionary duties on Federal Defendants to engage in reasoned decision making by explaining changes to existing policy.  This includes providing a

reasoned explanation for changes to quarterly oil and gas lease sales, and amendments to the North Dakota RMP.  This is especially true when those changes in policy "engender[] serious reliance interests that must be taken into account."  *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. at 2125. That reasoned analysis must show how any change in policy is "permissible under the statute." *F.C.C. v. Fox Television Stations*, 556 U.S. at 515.  North Dakota relies on the quarterly oil and gas sales in order to continue the development of State and private mineral interests under its unique "split-estate" regime.  This includes relying on lands noted as "available for leasing" in the North Dakota RMP.  Federal Defendants had a non-discretionary duty to provide a reasoned explanation for departing from the statutorily mandated quarterly oil and gas lease sales and the North Dakota RMP – and they failed to do so.

Because the Federal Defendants have failed to discharge their clear duties to act under the MLA, FLPMA, NEPA, and APA, a mandamus order requiring Federal Defendants to immediately resume quarterly lease sales (including making up the previously cancelled June and March lease sales) until they complete the mandatory notice and comment process for deviating from the quarterly oil and gas lease sales and North Dakota RMP, and provide an environmental assessment and reasoned justification for the same, is both necessary and appropriate.

### C.  North Dakota Has a Clear Right to Mandamus Relief.

Because the MLA imposes specific, non-discretionary duties on Federal Defendants to hold quarterly oil and gas lease sales in North Dakota, including the non-discretionary procedures for posting notices for lease sales when there are parcels available for leasing in North Dakota, North Dakota has a clear right to the relief sought; i.e., the mandated quarterly lease sales.  BLM's own National NEPA Register confirms that parcels were available for leasing in North Dakota for the March, June, and September quarterly oil and gas lease sales.  *See* BLM National NEPA

Register, 2021 March Oil and Gas Lease Sale for the Montana State office (available at https://eplanning.blm.gov/eplanning-ui/project/2002224/510); *see also* **Section II.A.**, *supra*; Complaint, ¶¶ 37-38, 42.  The Federal Defendants have deprived North Dakota of its statutory right under the MLA to participate in and benefit from the quarterly oil and gas lease sales.

FLPMA, NEPA, and the APA also impose specific, non-discretionary duties on the Federal Defendants to notify, and allow North Dakota to comment on, changes to the established North Dakota RMP or deviations from the quarterly lease sales mandated under the MLA.  This includes providing an environmental assessment of changes to the North Dakota RMP, and a reasoned justification for that significant change.  The Federal Defendants materially changed the North Dakota RMP by withdrawing all federal lands in North Dakota from the lease sales program without first providing North Dakota notice and an opportunity to comment on significant proposed changes on North Dakota's own plan.  The Federal Defendants failed to provide any environmental assessment of the impact of that change, and failed to provide any reasoned justification for the change, in violation of NEPA and the APA.  The Federal Defendants have therefore deprived North Dakota of its right to participate in the public notice and comment process required by FLPMA, NEPA, and the APA.  *See Spokeo v. Robins*, 136 S. Ct. 1540, 1549 (2016) (explaining that "the violation of a procedural right granted by statute" can constitute the injury in fact required for a plaintiff to establish standing).

### D.  No Other Adequate Remedy Exists.

The Interior Board of Land Appeals ("IBLA") has recognized that, in cases such as this one, no other adequate remedy exists for North Dakota to vindicate its rights.  In *Brigham Oil*, the IBLA upheld penalties against an operator who proceeded to drill a well without a permit, rejecting the operator's argument that BLM's failure to perform the mandatory duties under a similar section

of 30 U.S.C. § 226 could be overlooked.  The IBLA observed that the operator's remedy for agency's failure was to institute a "'court action' to require BLM to fulfill its statutory obligation, either through a mandamus action or through provisions of the [APA] authorizing actions to compel a federal official to perform a nondiscretionary duty." *Brigham Oil*, 181 IBLA at 288 (observing that "clearly a court could order BLM to perform its nondiscretionary duties").

North Dakota is in a similar situation here.  It has been excluded from and cannot participate in the mandatory statutory notice and comment process required before the Federal Defendants cancel quarterly oil and gas lease sales or modify the North Dakota RMP because the Federal Defendants have already unlawfully and unilaterally cancelled the March, June, and now September lease sales, and effectively amended the North Dakota RMP.  Federal Defendants' delay has already cost North Dakota over $82 million in lost bonuses, royalties, and taxes, which North Dakota cannot ever fully recover.

As evidenced by the Order denying the preliminary injunction in the Wyoming Action, seeking a preliminary injunction in this action would be duplicative of the relief already granted by the preliminary injunction in the Louisiana Action.  Even if North Dakota sought a preliminary injunction here, the Federal Defendants have **yet to comply** with the preliminary injunction issued in the Louisiana Action.  Further, because the preliminary injunction in the Louisiana Action does not mandate that the Federal Defendants hold the previously cancelled March and June lease sales (but rather prohibits any further cancellations), a mandamus action is appropriate here to require the Federal Defendants to complete their non-discretionary duties and hold the cancelled March and June quarterly oil and gas lease sales in North Dakota, in addition all future quarterly oil and gas lease sales if and until the Federal Defendants comply with the procedural requirements of FLPMA, NEPA, and the APA for halting those sales and amending the North Dakota RMP.  This

is true even if the Federal Defendants resume quarterly oil and gas lease sales in the remainder of 2021, as their recent August 16, 2021 press release indicates they **may choose to do**, over two months after the preliminary injunction Order was issues in the Louisiana Action, and after the time period for noticing the September 2021 quarterly oil and gas lease sale had already passed.

Every day that the Federal Defendants refuse to comply with their statutory obligations to hold quarterly lease sales inflicts new harms on North Dakota – both procedural and financial. Because no remedy other than mandamus is available to North Dakota, the Court should grant this Motion.

### REQUEST FOR ORAL ARGUMENT.

North Dakota respectfully requests an in person oral argument on the relief requested in its Motion for Writ of Mandamus and this Memorandum in Support of the same.  This case raises complex issues regarding the mandamus authority of this Court and the Federal Defendants' mandatory duties under several federal statutes.  Given the importance of these questions to the determination of this case and the complexity of this area of law, North Dakota believes that the Court's decision-making process would be significantly aided by oral argument.

### CONCLUSION

For the reasons set forth above, North Dakota respectfully request that the Court:

(1) Hold oral argument on the Motion for Immediate Mandamus Relief; and

(2) Enter an ORDER providing immediate mandamus relief to North Dakota compelling the Federal Defendants to comply with the preliminary injunction issued in the Louisiana Action and their statutory duties under the MLA, FLPMA, NEPA, and APA to hold the previously cancelled March, June, and September quarterly oil and gas lease sales, and hold all future lease

sales until the Federal Defendants comply with the procedural process under the MLA, FLPMA, NEPA, and APA for modifying the North Dakota RMP.

Dated:  August 23, 2021

WAYNE STENEHJEM
ATTORNEY GENERAL
STATE OF NORTH DAKOTA

/s/ *Paul M. Seby*
Paul M. Seby
Special Assistant Attorney General
Greenberg Traurig, LLP
1144 15th St, Suite 3300
Denver, CO 80202
Phone: (303) 572-6584
Email: sebyp@gtlaw.com

Matthew Sagsveen
Solicitor General
600 E. Boulevard Ave Dept. 125
Bismarck ND 58505
Phone: (701) 328-2595
Email: masagsve@nd.gov

COUNSEL FOR PLAINTIFF
STATE OF NORTH DAKOTA