Kyle Tisdel, NM Bar No. 152173 (*pro hac vice pending*)
Western Environmental Law Center
208 Paseo del Pueblo Sur, Unit 602
Taos, NM 87571
(575) 613-8050
tisdel@westernlaw.org

Melissa Hornbein, MT Bar No. 9694 (*pro hac vice pending*)
Western Environmental Law Center
103 Reeder's Alley
Helena, MT 59601
(406) 708-3058
hornbein@westernlaw.org

*Counsel for Center for Biological Diversity, Dakota Resource Council, and Western Organization of Resource Councils*

Michael Freeman, CO Bar No. 30007 (*pro hac vice pending*)
Thomas Delehanty, CO Bar No. 51887 (*pro hac vice pending*)
Earthjustice
633 17th Street, Suite 1600
Denver, CO 80202
(303) 996-9615
mfreeman@earthjustice.org
tdelehanty@earthjustice.org

*Counsel for Sierra Club*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| State of North Dakota, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:21-cv-00148-DMT-CRH |
| | ) | |
| United States Department of Interior, *et. al*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| Center for Biological Diversity, Dakota Resource Council, Sierra Club, and Western Organization of Resource Councils, | ) | |
| | ) | |
| Proposed Intervenors. | ) | |

## MEMORANDUM IN SUPPORT OF
## CONSERVATION GROUPS' UNOPPOSED MOTION TO INTERVENE

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

BACKGROUND ...........................................................................................................2

ARGUMENT ................................................................................................................5

I.     The Conservation Groups Are Entitled to Intervene as of Right ........................................5

     A.     The Motion to Intervene is Timely ........................................................6

     B.     The Conservation Groups Have an Interest in the Subject Matter of this Litigation.........................................................................................................7

          1.     The Conservation Groups Use, Enjoy, and Live Near Public Lands that Are Impacted by Oil and Gas Leasing that North Dakota Seeks to Compel........................................................................................................7

          2.     The Conservation Groups Have Advocated for a Leasing Pause and Participated in Administrative Processes for Oil and Gas Lease Sales in North Dakota.........................................................................................9

     C.     The Conservation Groups' Interests May Be Impaired as a Result of this Litigation.........................................................................................................11

     D.     The Federal Defendants Do Not Adequately Represent the Conservation Groups' Interests .....................................................................................12

II.     Alternatively, the Court Should Grant the Conservation Groups Permissive Intervention ......................................................................................................16

CONCLUSION.............................................................................................................17

## INTRODUCTION

The Center for Biological Diversity, Dakota Resource Council, the Sierra Club, and Western Organization of Resource Councils (collectively, the "Conservation Groups") respectfully move under Federal Rule of Civil Procedure 24 to intervene as defendants in this action because Plaintiff State of North Dakota seeks relief that would harm the Conservation Groups' interests in protecting public lands from the impacts of federally managed oil and gas leasing and development.

North Dakota challenges the U.S. Department of the Interior's temporary pause on the issuance of new oil and gas lease sales, including the postponement of the March and June 2021 Montana/Dakotas sales. North Dakota asserts the pause and postponements were made pursuant to President Biden's Executive Order 14008, "Tackling the Climate Crisis at Home and Abroad," which directs the Secretary of the Interior, to the extent consistent with applicable law, to pause issuance of new federal oil and gas leases pending a comprehensive review of the government's leasing and permitting practices. 86 Fed. Reg. 7,619, 7,624–25 (January 27, 2021); ECF No. 1 (Compl.) at 2–3. The relief North Dakota seeks is truly extraordinary: an order from this Court compelling the Bureau of Land Management (BLM) to conduct, and prohibiting BLM from canceling, quarterly oil and gas lease sales in North Dakota; and barring the Interior Department from implementing President Biden's order in North Dakota.

The Conservation Groups seek to intervene as of right under Federal Rule of Civil Procedure 24(a)(2), or alternatively, permissively under Rule 24(b). The Conservation Groups meet all the requirements to intervene as of right because they have individually and collectively worked for decades to protect public lands, waters, and vulnerable communities from the impacts of oil and gas development. Many of the Conservation Groups' member organizations have

1

devoted years to advocating for a pause in federal oil and gas leasing while the government considers much-needed reforms. The relief North Dakota seeks would seriously impair the Conservation Groups' ability to protect their interests in safeguarding public health, cultural resources, air and water quality, wildlife, and the climate. The Conservation Groups' more focused interests would not be adequately represented by the Federal Defendants, who recently announced they intend to resume oil and gas leasing.

## BACKGROUND

BLM manages the onshore oil and gas leasing program for 700 million acres of subsurface mineral estate owned by the federal government.[1] As part of this program, BLM holds lease sales in oil and gas producing states, reviewing parcels that have been nominated for lease and exercising its discretion to determine which parcels, if any, to offer.[2] The federal oil and gas leasing program operates under regulations that have not been substantially updated in more than 30 years, and is plagued by a host of well-documented problems that have significant fiscal and environmental consequences.[3] BLM—including the office responsible for leasing in

---

[1] BLM, *About the BLM Oil and Gas Program*, https://www.blm.gov/programs/energy-and-minerals/oil-and-gas/about (last accessed Sept. 17, 2021).

[2] *See, e.g.*, BLM, *Leasing*, https://www.blm.gov/programs/energy-and-minerals/oil-and-gas/leasing (last accessed Sept. 17, 2021) (noting parcels must be reviewed for compliance with Resource Management Plans and other factors before they can be offered).

[3] *See, e.g.,* GAO, *Federal Energy Development: Challenges to Ensuring a Fair Return for Federal Energy Resources*, GAO-19-718T (Sept. 24, 2019), https://www.gao.gov/products/gao-19-718t (criticizing below-market royalty rates and other fiscal terms); GAO, *Oil and Gas Development: Actions Needed to Improve Oversight of the Inspection and Enforcement Program*, GAO-19-7 (Feb. 14, 2019), https://www.gao.gov/products/gao-19-7 (poor regulatory oversight and enforcement); GAO, *Oil and Gas Lease Management: BLM Could Improve Oversight of Lease Suspensions with Better Data and Monitoring Procedures*, GAO-18-411 (June 19, 2018), https://www.gao.gov/products/gao-18-411 (allowing abuses of lease suspensions); GAO, *Oil and Gas: Onshore Competitive and Noncompetitive Lease Revenues*, GAO-21-138 (Dec. 9, 2020), https://www.gao.gov/products/gao-21-138 (outdated noncompetitive leasing); GAO, *Oil and Gas: Bureau of Land Management Should Address Risks*

2

North Dakota—often issues leases that threaten natural resources like usable groundwater. *See, e.g.*, *WildEarth Guardians v. U.S. Bureau of Land Mgmt.*, 457 F. Supp. 3d 880 (D. Mont. 2020) (finding BLM violated the National Environmental Policy Act by failing to evaluate impacts to the climate and groundwater). Due in part to the leasing program's shortcomings and the many conflicts it creates, BLM commonly cancels or postpones scheduled lease sales.[4]

Recognizing these problems, President Biden on January 27, 2021 directed the Interior Department to conduct "a comprehensive review and reconsideration of Federal oil and gas permitting and leasing practices in light of the Secretary of the Interior's broad stewardship responsibilities over the public lands and in offshore waters, including potential climate and other impacts." 86 Fed. Reg. at 7624–25. The Executive Order directed that, "[t]o the extent consistent with applicable law," new leasing be paused while the review is pending. *Id.* at 7625.

Subsequently, BLM postponed the oil and gas lease sales that had been proposed for the first and second quarters of 2021 in North Dakota, *see* Compl. at 2. On July 7, 2021, North Dakota filed its complaint with this Court. *Id.*

Proposed Intervenor-Defendant Center for Biological Diversity (the Center or CBD) has over 84,300 members, including many in North Dakota. CBD works to ensure the preservation, protection, and restoration of biodiversity, native species, ecosystems, climate conditions, public lands and waters, and public health through science, policy, and environmental law and seeks to

---

*from Insufficient Bonds to Reclaim Wells*, GAO-19-615 (Sept. 18, 2019), https://www.gao.gov/products/gao-19-615 (insufficient reclamation bonding).

[4] Ex. 1, Decl. of Peter Cowan ¶¶ 7–8, ECF No. 120-4 in Case No. 2:21-cv-00778-TAD (E.D. La. May 19, 2021) (explaining that BLM has canceled or postponed numerous sales for a variety of reasons, including at least 10 sales from 2018–2020); Ex. 2, Decl. of Thomas Delehanty (discussing and compiling 19 examples of onshore lease sale postponements or cancellations under multiple presidential administrations from 2015 to 2020).

secure a future for animals and plants hovering on the brink of extinction, for the ecosystems they need to survive, and for a healthy, livable future.  CBD's efforts include public education, advocacy, litigation to enforce environmental laws, and participation in the government's administrative decision-making processes.[5]

Proposed Intervenor-Defendant Dakota Resource Council (DRC) was formed in 1978 to protect North Dakota's land, air, water, rural communities, and agricultural economy. DRC's mission is to promote sustainable use of North Dakota's natural resources and family-owned and operated agriculture by building member-led local groups that empower people to influence the decision-making processes that affect their lives and communities.[6]

Proposed Intervenor-Defendant Sierra Club is the nation's oldest grassroots organization dedicated to the protection and preservation of the environment. Sierra Club has approximately 3.8 million members and supporters nationwide, including chapters and members in each of the 50 states. Sierra Club's North Dakota chapter has 815 members.[7]

Proposed Intervenor-Defendant Western Organization of Resource Councils (WORC), a nonprofit organization that works to advance the vision of a democratic, sustainable, and just society through community action. WORC is committed to building sustainable communities that balance economic growth with the health of people and stewardship of their land, water, and air resources. WORC has 365 members in North Dakota.[8]

---

[5] Ex. 5, Declaration of Michael Saul ¶¶ 11–12.
[6] Ex. 6, Declaration of Linda Weiss ¶ 2.
[7] Ex. 4, Declaration of Catherine Collentine ¶ 2.
[8] Ex. 8, Declaration of Sara Kendall ¶¶ 1, 4.

## ARGUMENT

### I.    The Conservation Groups Are Entitled to Intervene as of Right.

Under Federal Rule of Civil Procedure 24(a), a movant is entitled to intervene as of right if: (1) the motion to intervene is timely; (2) the movant claims an interest in the property or transaction that is the subject of the action; (3) the movant's interest may "as a practical matter" be impaired or impeded by the litigation; and (4) the movant's interest is not adequately represented by existing parties. *See Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759 F.3d 969, 975 (8th Cir. 2014). "Rule 24 should be construed liberally, with all doubts resolved in favor of the proposed intervenor." *Id.* (internal quotation marks omitted).

The Conservation Groups satisfy each of the Rule 24(a) requirements and are therefore entitled to intervene in this action as of right.[9]

---

[9] While the Eighth Circuit has historically required intervenors to show Article III standing, *Mausolf v. Babbitt*, 85 F.3d 1295, 1300 (8th Cir. 1996), the Supreme Court recently clarified that prospective intervenors need not demonstrate independent standing if an existing party has standing and seeks the same relief—and held that it is legal error for a court to require an intervenor to demonstrate standing in those circumstances. *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020) ("[T]he Federal Government clearly had standing to invoke the Third Circuit's appellate jurisdiction, and both the Federal Government and the [intervenor] asked the court [for the same relief]. The Third Circuit accordingly erred by inquiring into the [intervenor's] independent Article III standing."); *see also Becerra v. Azar*, 501 F. Supp. 3d 830, 837 n.2 (N.D. Cal. 2020) (citing *Little Sisters* for the proposition that an intervenor need not establish independent standing if an existing party with standing seeks the same relief). Nonetheless, the Conservation Groups have standing to intervene because (1) oil and gas leases and the development they enable degrade public lands in North Dakota and injure Conservation Group members' recreational and aesthetic interests; (2) the relief North Dakota seeks would require new federal oil and gas lease sales, including leases on specific lands Conservation Group members use and enjoy, and therefore cause the Conservation Groups' injury; and (3) a favorable ruling from this Court would redress the Conservation Groups' injury by enabling BLM to continue its pause and programmatically review the leasing program before issuing additional leases on public lands where Conservation Group members recreate. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

**A.  The Motion to Intervene is Timely.**

Rule 24(a)'s "timeliness" requirement queries "all the circumstances of the case" and "[n]o ironclad rules govern this determination." *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 998 (8th Cir. 1993). However, courts often focus on (1) how much the litigation has progressed at the time the intervention motion is filed, (2) the prospective intervenor's knowledge of the litigation, (3) the reason for delay in seeking intervention, if any; and (4) whether that delay may prejudice existing parties. *Am. C.L. Union of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1094 (8th Cir. 2011).  This inquiry evaluates potential prejudice from "delay in moving to intervene, not whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change."  *United States v. Union Elec. Co.*, 64 F.3d 1152, 1159 (8th Cir. 1995).

Here, North Dakota filed its complaint on July 7, 2021, ECF No. 1, and the Federal Defendants filed their answer on September 7, 2021, ECF No. 11. The Federal Defendants also have not yet responded to North Dakota's August 23, 2021 motion for mandamus relief, ECF No. 5. The Conservation Groups' intervention at this early stage, just two months after the complaint was filed and 10 days after the Federal Defendants answered, and where no scheduling order has been issued, no trial date set, and no cut-off date for motions set, would not prejudice any existing party and is clearly timely. *See, e.g.*, *Union Elec.*, 64 F.3d at 1159 (finding intervention timely where motion was filed "slightly more than four months" after the suit was filed and "the litigation had progressed little"); *Am. Med. Ass'n v. Stenehjem*, No. 1:19-cv-1252019, WL 10920631, at *4 (D.N.D. Nov. 26, 2019) (finding intervention timely where the motion was filed "approximately two months after [the] lawsuit was filed, and at a time when the litigation has consisted only of Plaintiffs' complaint, Defendants' answers, and briefing on

Plaintiffs' motion for preliminary injunction"); *Target Logistics Mgmt., LLC v. City of Williston, N. Dakota*, 2017 WL 6459800, at *2 (D.N.D. Dec. 18, 2017) (finding intervention timely even after a preliminary injunction had been issued and vacated).

### B. The Conservation Groups Have an Interest in the Subject Matter of this Litigation.

Rule 24(a) next requires the movant to demonstrate an interest related to the property or transaction in dispute. Fed. R. Civ. P. 24(a)(2). To justify intervention, an interest must be "direct, substantial, and legally protectable." *Union Elec.*, 64 F.3d at 1161. However, "contingent" interests—those that could arise under future circumstances—may satisfy the requirement. *Id.* at 1162–64 (recognizing the right to bring possible future contribution claims as a protectable interest). Courts are instructed to use the interest test as "a practical guide to disposing of lawsuits by involving as many apparently concerned parties as is compatible with efficiency and due process." *Id.* at 1162.

The Conservation Groups here have a direct, substantial, and legally protectable interest in their use of public lands in North Dakota that are impacted by oil and gas development— including the specific lands where North Dakota seeks to compel leasing. They also have a protectable interest in preventing diminution of their members' property values arising from irresponsible oil and gas development in the region. The Conservation Groups have also long advocated for a pause in oil and gas leasing and have participated in the administrative processes for oil and gas lease sales in North Dakota, further entitling them to intervene as of right.

### 1. The Conservation Groups Use, Enjoy, and Live Near Public Lands that Are Impacted by Oil and Gas Leasing that North Dakota Seeks to Compel.

The Eighth Circuit has found that an environmental group's interest in ensuring responsible management of natural resources justifies intervention. *Mausolf*, 85 F.3d at 1302–03.

Specifically, "aesthetic, scientific and recreational" interests are "adequate, for intervention purposes." *Mausolf v. Babbitt*, 158 F.R.D. 143, 146 (D. Minn. 1994), *aff'd in relevant part* 85 F.3d at 1302; *see also United States v. Rsrv. Mining Co.*, 56 F.R.D. 408, 417 (D. Minn. 1972) (finding intervention justified based on interests in "us[ing] Lake Superior "as an esthetic, recreational, and conservational resource" and "protecting the Lake from pollution"). The Eighth Circuit has also recognized that potential diminution of property value is an interest that sustains intervention. *Mille Lacs*, 989 F.2d at 998 (finding a protectable interest where the litigation "may affect" the proposed intervenors' property values).

Here, members of the Conservation Groups use, enjoy, and recreate on public lands threatened by future oil and gas leasing and development.[10] At the time of President Biden's order, BLM was planning to offer oil and gas leases in March and June 2021 in locations where Conservation Group members recreate. For example, in the March 2021 sale BLM proposed to lease a parcel directly adjoining Theodore Roosevelt National Park and another parcel adjacent to Fort Union Trading Post. Conservation Group members recreate on those lands, and issuing leases there would threaten the area's natural beauty and solitude that the members enjoy.[11] Similarly, Conservation Groups' members live near or adjacent to public lands, and in many cases rely on those lands for their livelihoods, cultural significance, and spiritual identity.[12] The

---

[10] The pause in leasing does not prevent new oil and gas development, which can continue on existing leases. Indeed, "[a]pprovals for companies to drill for oil and gas on U.S. public lands are on pace this year to reach their highest level since George W. Bush was president." Matthew Brown, Associated Press, *U.S. Drilling Approvals Increase Despite Biden Climate Pledge* (July 12, 2021), https://apnews.com/article/joe-biden-business-science-environment-and-nature-6ac8ff49970e4b052489678b40e3ba82. However, the leasing pause does ensure that new leases do not commit additional public lands to drilling before BLM determines whether and under what conditions leasing should occur.

[11] Ex. 3, Declaration of Wayde Schafer ¶ 11; Saul Decl. ¶ 8; Weiss Decl. ¶ 7.

[12] Ex. 7, Declaration of Lisa Deville ¶¶ 2–3, 18; Kendall Decl. ¶¶ 4, 6.

leasing pause and postponement of these sales benefits the Conservation Groups by preventing these lands from being leased for oil and gas development under outdated and inadequate regulations and lease stipulations while BLM reviews and modernizes its leasing program. As in *Mausolf*, these interests support intervention. 85 F.3d at 1302–03.

Furthermore, some Conservation Group members live on split estate lands, where the federal government owns the minerals underlying their property. Others live near or adjacent to federal or tribal lands and/or federal or Indian minerals where oil and gas leasing and development occurs or has been proposed. Because of this proximity, these members' lands are directly impacted by many of the practices that the leasing pause and programmatic review are aimed at addressing, including speculative leasing, poorly planned development, and abandoned and orphaned infrastructure.  All of these issues—which will arise if BLM is required to offer leases under its outdated rules—can and do negatively affect members' property value.[13] Indeed, one Conservation Group member attests that oil and gas exploration "adjacent to and in some cases on" her family farm has "affected the zoning" and caused her family "to sell some parts of [the farm] in order to keep others."[14] The potential for this litigation to diminish Conservation Group members' property value supports intervention. *Mille Lacs*, 989 F.2d at 998.

> ### 2.     The Conservation Groups Have Advocated for a Leasing Pause and Participated in Administrative Processes for Oil and Gas Lease Sales in North Dakota.

Prior advocacy can establish a protectable interest for purposes of intervention. *Mausolf*, 85 F.3d at 1302 ("The Association has consistently demonstrated its interest in the Park's well-being (as it sees it) and has worked hard over the years, in various proceedings, to protect that

---

[13] *See* Kendall Decl. ¶¶ 4, 6.
[14] Weiss Decl. ¶ 8.

interest."). Similarly, a party involved in an agency's administrative process "may properly intervene as of right in a subsequent judicial challenge to the resulting" decision. *Aventure Commc'ns Tech., LLC v. Iowa Utilities Bd.*, 734 F. Supp. 2d 636, 650 (N.D. Iowa 2010).

The Conservation Groups here have a legally protectable interest arising from their advocacy for a pause in leasing pending consideration of reforms to the program, and their long history of administrative engagement in BLM's oil and gas leasing program. The Conservation Groups have directly advocated for the federal government's comprehensive review and leasing pause challenged in this case.[15]  The Conservation Groups have also engaged in the administrative processes for oil and gas leasing in North Dakota. For example, the Sierra Club commented on BLM's September 22, 2020 oil and gas lease sale, commented on and protested BLM's September 24, 2019 sale, and protested BLM's July 2019 sale.[16] The Sierra Club, DRC, and WORC also advocated against an oil and gas refinery in North Dakota that would have impaired the scenic beauty and degraded the airshed around Theodore Roosevelt National Park.[17] DRC also commented on the Oil and Gas Leasing Draft Supplemental Environmental Impact Statement (DEIS) Northern Great Plains Revision in 2018.[18]

These advocacy efforts for the leasing pause and longstanding participation in the oil and gas leasing administrative processes establish an interest supporting intervention. *See Mausolf*, 85 F.3d at 1302; *Aventure*, 734 F. Supp. 2d at 650.

---

[15] Collentine Decl. ¶ 5 & Attachs. 1–5; Saul Decl. ¶¶ 20–21; Kendall Decl. ¶¶ 7–8.
[16] Collentine Decl. ¶ 9–10.
[17] Schafer Decl. ¶ 6; Weiss Decl. ¶ 4.
[18] Weiss Decl. ¶ 2.

### C.  The Conservation Groups' Interests May Be Impaired as a Result of this Litigation.

The Conservation Groups' interests also may be impaired if North Dakota succeeds in this lawsuit. The impairment element of Rule 24(a) requires "only" that the litigation "may as a practical matter impair or impede the applicant's ability to protect its interest." *Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1307–08 (8th Cir. 1995) (internal quotation marks and alteration omitted). This standard does not require an intervenor to demonstrate with "certainty that their interests *will* be impaired," but only that disposition "*may*" impair their interests. *Little Rock School Dist. v. Pulaski Cnty. Special School Dist. No. 1*, 738 F.2d 82, 84 (8th Cir. 1984); *see also Kansas Public*, 60 F.3d at 1308 (overruling district court's requirement that the intervenor show its interests "would" or "will be" impaired). When assessing a motion to intervene, courts should "assume the plaintiff will receive the relief it seeks." *National Parks*, 759 F.3d at 973.

North Dakota's requested relief would impair the Conservation Groups' interests in at least two ways. First, North Dakota seeks to require BLM to hold two lease sales that would directly impair Conservation Group members' recreational, aesthetic, and other interests.[19] *See* Compl. at 29; pp. 7–10, *supra*. Second, North Dakota's requested relief would constrain BLM's options for reforming the federal oil and gas program and its ability to manage federal lands in a manner, as advocated by the Conservation Groups, that mitigates the impacts of oil and gas development on the public lands where Conservation Group members live and recreate.[20] As

---

[19] Schafer Decl. ¶¶ 11–13; Saul Decl. ¶¶ 10, 14–15, 22, 27; Weiss Decl. ¶ 11, Deville Decl. ¶ 6–9, 13; Kendall Decl. ¶ 6.
[20] *See* Collentine Decl. ¶ 11; Saul Decl. ¶ 30; Deville Decl. ¶ 16; Weiss Decl. ¶ 11; Kendall Decl. ¶¶ 5, 9.

described above, the Conservation Groups have advocated for years for the government to adopt

such a leasing pause, and they have a long history of working to prevent irresponsible oil and gas

leasing on public lands in North Dakota. If North Dakota obtains the remedy it seeks, these

benefits will be lost. This likelihood of impairment of the Conservation Groups' interests is more

than sufficient for intervention. *See Kansas Public*, 60 F.3d at 1307–08.

### D. The Federal Defendants Do Not Adequately Represent the Conservation Groups' Interests.

The final requirement to intervene as of right under Rule 24(a)—inadequacy of

representation— is a "minimal burden." *Mille Lacs*, 989 F.2d at 999 (internal quotation mark

omitted). Where a prospective intervenor's interests are "identical" to that of an existing party,

the intervenor must overcome a presumption of adequate representation. *Arrow v. Gambler's

Supply, Inc.*, 55 F.3d 407, 409–10 (8th Cir. 1995). This presumption may apply when the

government is already a party and its *parens patriae* duties subsume the prospective intervenor's

interests. *Mille Lacs*, 989 F.2d at 1000–01. However, the presumption does not apply if the

prospective intervenor seeks to protect narrower interests "not shared by the general citizenry."

*Id.* at 1001; *see also Nat'l Parks*, 759 F.3d at 977 (presumption applies "only to the extent the

proposed intervenor's interests coincide with the public interest") (internal quotation marks and

alteration omitted).

Here, a presumption of adequate representation does not apply because the Conservation

Groups' interests are narrower than—and often in conflict with—the government's multifaceted

land management duties. BLM's role is not to represent the Conservation Groups' interests.

Rather, under the Federal Land Management and Policy Act (FLPMA), BLM manages public

lands under a "multiple use" mandate that requires it to balance a wide variety of interests,

including "recreation, range, timber, minerals, watershed, wildlife and fish, and natural scenic,

scientific and historical values." 43 U.S.C. § 1702(c). By contrast, the Conservation Groups have narrower interests: protecting and conserving public lands where their members live, work, recreate, and find spiritual value and addressing climate change.[21] In essence, BLM is statutorily charged with balancing both environmental protection and oil and gas development, and the Conservation Groups' interests represent only one side of that scale. While North Dakota brings this lawsuit to promote oil and gas development, the Conservation Groups have important countervailing stakes in protecting public lands and the environment. Granting intervention will ensure that both sides of the debate are fully represented in this case.

In similar cases, the Eighth Circuit has held that an intervenor's interests are narrower than those of the government and the "general citizenry" so that no presumption of adequate representation applies. *Mille Lacs*, 989 F.2d at 1001; *see also National Parks*, 759 F.3d at 977 (8th Cir. 2014) (finding a power plant operator's financial interests were narrower than the federal government's "much broader responsibility of executing the [Clean Air Act's] goal of preventing and remedying visibility impairments"); *Am. Med. Ass'n v. Stenehjem*, 2019 WL 10920631, at *5 (D.N.D. Nov. 26, 2019) (finding the government's broad interest in protecting its laws from constitutional challenge did not subsume two pregnancy help centers' narrower reputational and financial interests impacted by the challenged law); *see also Mausolf*, 85 F.3d at 1303 (finding presumption rebutted where Park Service had to balance interests of both conservationists and snowmobilers).

Because the presumption does not apply (or has been rebutted), the Conservation Groups can satisfy their "minimal burden" by showing a mere possibility that their interests and the

---

[21] *See, e.g.*, Collentine Decl. at ¶¶ 3–8; Saul Decl. ¶ 8; Deville Decl. ¶¶ 2–3, 18; Weiss Decl. ¶¶ 2; Kendall Decl. ¶¶ 1, 7.

government's interests "may diverge." *Mille Lacs*, 989 F.2d at 1001. This standard is easily met because such a divergence has already occurred.

BLM has a long history of giving more weight to oil and gas development than conservation when balancing multiple uses on public lands. The agency for years has approved numerous lease sales and fossil fuel projects, and adopted policies, over the opposition of the Conservation Groups.[22] The Conservation Groups have also litigated repeatedly against the government on oil and gas issues due to the government's failure to protect the Conservation Groups' interests. *See, e.g.*, *Sovereign Inupiat for a Living Arctic v. U.S. Bureau of Land Mgmt.*, No. 3:20-cv-00290-SLG, 2021 WL 3667986, at *1 (D. Alaska Aug. 18, 2021) (CBD suing the Department of the Interior and BLM over oil and gas projects in Alaska); *Utah Physicians for a Healthy Env't v. U.S. Bureau of Land Mgmt.*, No. 2:19-cv-00256-DBB, 2021 WL 1140247 (D. Utah Mar. 24, 2021) (Sierra Club suing BLM over coal leases); *Wilderness Workshop v. U.S. Bureau of Land Mgmt.*, ECF No. 81 in Case No. 1:18-cv-00987-MSK (D. Colo. Jan. 6, 2021) (CBD and Sierra Club suing BLM over leases in Colorado's Piceance Basin and BLM agreeing to remand); *California v. U.S. Bureau of Land Mgmt.*, No. 18-cv-00521-HSG, 2020 WL 1492708 (N.D. Cal. Mar. 27, 2020) (Sierra Club and CBD suing Interior and BLM over hydraulic fracturing regulations); *W. Watersheds Project v. Zinke*, 336 F. Supp. 3d 1204 (D. Idaho 2018) (CBD suing the Department of the Interior and BLM over oil and gas leasing in sage-grouse habitat); *San Juan Citizens All. v. U.S. Bureau of Land Mgmt.*, 326 F. Supp. 3d 1227 (D.N.M. 2018) (Sierra Club suing BLM over leases in New Mexico's San Juan Basin).

---

[22] Saul Decl. ¶ 25; Collentine Decl. ¶ 10.

That record of failing to protect the Conservation Groups' interests extends to North Dakota. For example, BLM rejected two Conservation Groups' protest of the December 2020 oil and gas lease sale in Montana and North Dakota, opting to lease 38 oil and gas lease parcels—including some within the Dakota Prairie Grasslands where Conservation Group members recreate —despite serious legal and environmental concerns.[23] BLM similarly rejected two Conservation Groups' protest of the September 2019 lease sale, leasing 12 parcels in Montana and North Dakota over the Conservation Groups' objections.[24]

BLM's track record of sacrificing the Conservation Groups' interests continues to this day, with the leasing pause at issue in this case. In response to another federal district court's order temporarily enjoining the same leasing pause at issue here, the federal government recently took the position that it was not obligated to resume leasing but voluntarily chose to do so anyway. Ex. 9, Defs.' Opp'n to Pls.' Mot. for Order to Show Cause and Compel Compliance, at 2, 13, ECF No. 155 in Case No. 2:21-cv-00778 (W.D. La. Aug. 24, 2021) (stating that the court's temporary injunction order "does not compel Interior to" resume leasing but nonetheless announcing anticipated dates for holding lease sales).[25] On August 31, 2021, BLM announced lease sales in several states, including North Dakota.[26] This willingness to voluntarily resume leasing harms the Conservation Groups' interests and signals a strong likelihood for further

---

[23] Collentine Decl. Attach. 7 (BLM dismissing protest of 38 parcels in Montana and North Dakota); *see also*, Saul Decl. ¶¶ 24–25.

[24] Collentine Decl. Attach. 6 (BLM dismissing protest of 12 parcels in Montana and North Dakota).

[25] The government appealed the district court's injunction but did not seek a stay pending appeal, calling further into question the adequacy of the government's representation of any shared interests.

[26] *E.g.*, BLM, *Montana-Dakotas Oil and Gas Lease Sales*, https://eplanning.blm.gov/eplanning-ui/project/2015346/570 (last accessed Sept. 17, 2021) (announcing that the parcels from the postponed March and June 2021 sales will be offered).

divergence of interests in the future. The government therefore does not and cannot adequately represent the Conservation Groups' interests in this case. *See Mille Lacs*, 989 F.2d at 1001; *National Parks*, 759 F.3d at 977; *American Medical*, 2019 WL 10920631, at *5–6; *Mausolf*, 85 F.3d at 1303. In short, the Conservation Groups have a right to represent their own interests in this case, rather than rely on an agency that regularly compromises those interests.

Because each of the four requirements is satisfied, the Court should grant the Conservation Groups intervention as of right.

## II.    Alternatively, the Court Should Grant the Conservation Groups Permissive Intervention.

In addition to qualifying for intervention as of right, the Conservation Groups satisfy the requirements for permissive intervention under Rule 24(b). Permissive intervention is appropriate where the movant demonstrates: (1) it has a claim or defense that shares a common question of law or fact with the main action; (2) the intervention will not cause undue delay or prejudice; and (3) the motion to intervene is timely. Fed. R. Civ. P. 24(b). "The principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *South Dakota ex rel Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003).

Here, the Conservation Groups' interests hinge on the questions of law and fact at the heart of this litigation: BLM's discretion to pause oil and gas leasing, including the March and June 2021 lease sales, pending a comprehensive review. In addition, this motion to intervene is timely, and intervention will not cause undue delay or prejudice to the existing parties. *See* pp. 6–7, *supra*. As such, if the Court does not grant intervention as of right, permissive intervention is warranted.

## CONCLUSION

For the foregoing reasons, the Court should grant the Conservation Groups intervention as a matter of right under Rule 24(a). Alternatively, permissive intervention should be allowed under Rule 24(b). A proposed answer is attached.

Respectfully submitted this 17th day of September, 2021,

*/s/ Kyle Tisdel*
Kyle Tisdel (*pro hac vice* pending)
Western Environmental Law Center
208 Paseo del Pueblo Sur, Unit 602
Taos, NM 87571
(575) 613-8050
tisdel@westernlaw.org

*/s/ Melissa Hornbein*
Melissa Hornbein (*pro hac vice* pending)
Western Environmental Law Center
103 Reader's Alley
Helena, MT 59601
(406) 708-3058
hornbein@westernlaw.org

*Counsel for Center for Biological Diversity, Dakota Resource Council, and Western Organization of Resource Councils*

*/s/ Michael Freeman*
Michael Freeman (*pro hac vice* pending)
Earthjustice
633 17th Street, Suite 1600
Denver, CO 80202
(303) 996-9615
mfreeman@earthjustice.org

*/s/ Thomas Delehanty*
Thomas Delehanty (*pro hac vice* pending)
Earthjustice

17

633 17th Street, Suite 1600
Denver, CO 80202
(303) 996-9628
tdelehanty@earthjustice.org

*Counsel for Sierra Club*

**CERTIFICATE OF SERVICE**

I certify that on this 17th day of September, 2021, I electronically filed the foregoing

**MEMORANDUM IN SUPPORT OF CONSERVATION GROUPS' UNOPPOSED**

**MOTION TO INTERVENE** with the Clerk of the U.S. District Court for the District of North

Dakota and served all parties using the CM/ECF system.

*s/ Michael S. Freeman*