UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| STATE OF NORTH DAKOTA, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>THE UNITED STATES DEPARTMENT OF )<br>INTERIOR; DEBRA ANN HAALAND, in her )<br>official capacity as Secretary of Interior; THE )<br>BUREAU OF LAND MANAGEMENT;<br>TRACY STONE MANNING, in her official<br>capacity as acting Director of the Bureau of<br>Land Management; and SONYA GERMANN,<br>in her official capacity as the Director of the<br>Montana-Dakotas Bureau of Land Management<br><br>Federal Defendants.<br><br>And<br><br>CENTER FOR BIOLOGICAL DIVERSITY;<br>SIERRA CLUB; WESTERN<br>ORGANIZATION OF RESOURCE<br>COUNCILS; and DAKOTA RESOURCE<br>COUNCIL,<br><br>Intervenor-Defendants | Lead Case No. 1:21-cv-00148<br>(Consolidated Case No. 1:23-cv-00004) |

**THE STATE OF NORTH DAKOTA'S RESPONSE TO THE FEDERAL DEFENDANTS'
STATUS REPORT IN RESPONSE TO ORDER SETTING DEADLINES, ECF NO. 128**

The State of North Dakota ("State" or "North Dakota") respectfully submits this Response to the Federal Defendants' August 24, 2023 "Status Report in Response to Order Setting Deadlines (Docket 125)", ECF No. 128. ("August 24 Status Report").

ACTIVE 690279470v1

The Court's Order Setting Deadlines (ECF No. 125) directed Federal Defendants, in part, to (1) submit a written report with the Court answering North Dakota's concerns regarding twenty-four (24) parcels or lands North Dakota identified to BLM as "High Priority" in a April 1, 2021 videoconference; and (2) ordered Federal Defendants to provide more data on the status of "Nominated Lands [that are] 'Pending NEPA' and 'Pending [Surface Management Agency ("SMA") Concurrence'" in future status reports. ECF No. 125 at ¶4. Federal Defendants' August 24 Status Report provides almost no new information on the status of these 24 parcels. Instead Federal Defendants assert they have no obligation to provide the information requested of it by the Court.

Federal Defendants filed the August 24 Status Report purportedly in response to the Court's two requests. In response to the first request, rather than substantively answering North Dakota's concerns on the 24 "High Priority" parcels, Federal Defendants provide only limited information on those parcels and instead dispute that North Dakota previously shared most of the 24 "High Priority" lands with BLM officials, and claim that in any event those "BLM personnel [that participated in that] call had no responsibility for leasing or adjudication decisions." ECF No. 128 at 2.

North Dakota agrees that some of the "High Priority" parcels identified at the August 9, 2023 status conference were not included in the original "High Priority" list shared with BLM in April of 2021. However, 11 parcels were on both lists, with 4 of those 11 parcels representing multiple land records. *See* Declaration of Merry Gamper Regarding Order Setting Deadlines, ECF No. 128-1 at ¶9; ECF No. 128-4. North Dakota used the rare opportunity of the April 1, 2021 meeting with BLM officials to also raise its concerns about BLM's lease sale cancellations and to identify the list of high priority parcels it wished to have leased at that time. It is both unsurprising

2

and unremarkable that North Dakota's list of "High Priority" parcels has evolved in the two and a half years of BLM delay and obstruction since that April 1, 2021 meeting. Further, Defendants' claim that the BLM personnel at the April 2021 meeting "had no responsibility for leasing or adjudication decisions" is irrelevant. North Dakota can only meet and communicate with the BLM officials the BLM makes available. One of North Dakota's chief complaints throughout these consolidated cases is that BLM has not been transparent regarding its decision-making process for fulfilling its statutory duty to timely plan for and ensure quarterly lease sales will be held, and who the decision makers were or are. In fact, it has taken this action, injunctive relief, and Court-mandated status reports for BLM to finally begin disclosing whom within its agency actually has knowledge of and makes decisions regarding quarterly lease sales. North Dakota cannot be faulted for sharing its list of "High Priority" parcels with the only BLM personnel made available to it by BLM, only for Federal Defendants to now play a shell game and claim those were the incorrect interlocutors.

Irrespective of the above, BLM knows which parcels North Dakota considers "High Priority" at this time. Federal Defendants provided only limited information about these 24 "High Priority" lands in Exhibit D to Merry Gampers' Declaration. ECF No. 128-5. For 11 of the "High Priority" parcels, Federal Defendants assert that "[f]urther information [is] not required by Paragraph 2.b of Revised Order (Docket 105) because nominated land neither was submitted to be considered for a lease sale in 2021 or later, nor had its status changed to one of the statuses listed in Paragraph 2.a of the Revised Order since 1/27/2021." ECF No. 128-5, Nomination IDs: MT00002603; MT00000777; MT00001123; MT00001123; MT00003373; MT00003373;

3

MT00003373; MT00016304; MT00016304; MT00014477; MT00016302.  This is despite 9 of the 11 parcels being listed as "Pending" or "Pending SMA Concurrence."[1]

While it is accurate that the status of these 11 parcels has not changed since January 27, 2021, that is because of Federal Defendants' persistent delays that triggered this litigation.  Federal Defendants' continued refusal to be transparent about these long "Pending" parcels violates the spirit of this Court's order – to provide North Dakota and the Court an update on Federal Defendants' efforts to timely process these parcels so they can be included in future quarterly lease sales.  By Federal Defendants own admission, it is doing nothing for these long pending "High Priority" parcels and refusing to provide the Court or North Dakota an update on the timeline on when these parcels will be included in future quarterly lease sales.

For the remaining 13 "High Priority" parcels, Federal Defendants state that 8 of the parcels completed their eligibility and availability determination on June 27, 2023.  ECF No. 128-5, Nomination IDs: MT00016872; MT00016874; MT00016867; MT00016868; MT00018641; MT00018644; MT00013781; MT00016865.  For those 8 parcels: only 2 are listed as sold (MT00016872; MT00016874); and 6 are listed as "Unavailable: Other – see comments" (MT00016867; MT00016868; MT00018641; MT00018644; MT00013781; MT00016865).  For the 6 parcels listed as "Unavailable," Federal Defendants do not provide other comments that would allow North Dakota to determine why they are unavailable.[2]  For example, pulling up Nomination ID MT00016867 in Exhibit A to Samantha Ironshirt's July 21, 2023 Declaration (ECF Nos. 120-1; 120-2) does not provide any more information for North Dakota or this Court to

---

[1] One of the 11 parcels (MT00014477) is listed as a duplicate; and one (MT00016302) is listed as "Unavailable: Other – see comments."
[2] As noted above, one of the prior 11 parcels whose status has not changed since January 27, 2021 is also listed as "Unavailable: Other – see comments."

4

evaluate as to why the parcel is unavailable.  As another example, Nomination ID MT00016865 in the same Exhibit A is listed as "Determined to be unavailable on June 20, 2023 because no continued interest in EOI."  However, the United States has not provided more information as to how the nominator was contacted, or how non-interest has been proven, for a parcel that was nominated on July 16, 2009. The Federal Defendant's labelling of parcels as "Unavailable" is thus unacceptable and does not provide North Dakota or the Court sufficient information to determine the reasoning behind the "Unavailable" status of these parcels.

For 2 of the remaining 5 parcels, Federal Defendants have provided extremely broad expected eligibility and availability completion dates, noting for Nomination ID MT00015999 that Federal Defendants anticipate an completing drainage determinations "by FY2025." For Nomination ID MT00013519 that Federal Defendants anticipate completing the availability and eligibility determination from "September 2023 to FY2025," despite acknowledging that SMA consent was provided for Parcel ID 2099-01-0228 in 2021, two years ago.   These broad completion dates, years into the future, are not acceptable.

For the 3 remaining parcels, the Federal Defendants assert that the "[a]nticipated date of eligibility and availability determination, if any, cannot be provided at present because it depends upon nonparty SMA Concurrence process, which is outside the control of the Department of the Interior."  *See* Nomination IDs MT00018253; MT00017247; MT00017251. This answer is unacceptable.  The SMA *concurrence process*, by definition, does not deprive Federal Defendants of either the affirmative obligation or ability to confer with the relevant federal SMAs to determine when an eligibility and availability determination may be completed.  As discussed in more detail below, the Concurrence Process is a mandatory and necessary part of the planning process in which both BLM and the SMAs have defined affirmative obligations.  The SMAs are not mere distant

ACTIVE 690279470v1

"nonparties": they are fellow federal agencies with whom Federal Defendants have a positive obligation to confer regarding the management of public lands. Doing nothing and refusing to confer with and seek concurrence from the SMAs violates Federal Defendants "statutory duty to appropriately plan for and complete their determination of whether nominated land was 'available' and 'eligible' on a timely, quarterly basis." ECF No. 98 at ¶147.

North Dakota requests that the Court order Federal Defendants to provide more substantive information on the 22 of the "High Priority" parcels not yet sold, about which Federal Defendants have refused to provide the substantive information necessary for North Dakota and this Court to determine if Federal Defendants are complying with the Preliminary Injunction issued in this matter (the 11 parcels on which Federal Defendants have taken no action since 1/27/21, the 6 parcels listed as "Unavailable: Other – see comments" with no additional explanation, the 2 parcels with very broad expected completion dates of the availability and eligibility analyses, and the 3 parcels in SMA review).

In response to the Court's second request, Federal Defendants have refused to provide any more data on the status of nominated lands that are "Pending NEPA" and "Pending SMA Concurrence," claiming that these lands and the SMAs such as the U.S. Forest Service ("USFS") and Army Corps of Engineers ("Corps"), are not subject to the Court's jurisdiction. August 24 Status Report, ECF No. 128 at 3.

Federal Defendants cannot avoid this Court's order to report on the status of BLM-managed lands simply because those parcels are currently in review by the USFS or Corps (or any other non-Interior SMA). SMAs are a necessary and integral part of BLM's quarterly lease sale planning process, and BLM does not relinquish its obligations and authority over BLM managed minerals, nor does this Court lose its jurisdictions over those BLM parcels, by dint of SMA

reviews.  The fact that the SMAs are not parties to this litigation does not relieve Federal Defendants of their obligation to update this Court and North Dakota on the status of BLM's planning process just because that process includes SMAs.  Further, requiring that BLM, not the SMAs themselves, report on the status of nominated parcels whose review process includes concurring with SMAs does not mean that this Court is exercising jurisdiction over non-party SMAs: rather, BLM is simply under the obligation to tell this Court and North Dakota what it knows and is doing about the status of BLM lands nominated for leasing.

This Court held that Federal Defendants have a "congressional mandate to timely evaluate whether lands meet the leasing requirements in § 226(b)(1)(A)." ECF No. 98 at ¶ 83.  This includes ""*plan*[*ning*] the activities necessary to have eligible lands available for sale." *Id.* at ¶86 (emphasis in original).  This Court also held that SMAs have a role in Federal Defendants' timely planning for eligible lands to be available for sale, including regulations "requiring the relevant SMA to (1) verify the specific parcel has been properly analyzed for NEPA purposes and (2) issue a recommendation to lease (or not lease) the parcel, which then BLM has to review and 'accept' when 'reasonable.'" ECF No. 98 at ¶ 71 (citing to 43 C.F.R. § 3101.7-2(c) and 36 C.F.R. § 228.102(e).

The fact that some SMAs, such as the USFS and the Corps are not parties in this case does not relieve Federal Defendants of their obligations to plan and conduct the activities necessary to have eligible lands available for sale.  BLM's own regulations state that while "[a]quired lands shall be leased only with the consent of the surface managing agency", that SMA "upon receipt of a description of the lands from the authorized officer, *shall* report to the authorized officer that it consents to leasing with stipulations, if any, or withholds consent or objects to leasing." 43 C.F.R. § 3101.7-1(a) (emphasis added).  Similarly, BLM "*shall* review all recommendations and shall

7

accept all reasonable recommendations of the surface managing agency." 43 C.F.R. § 3101.7-2(c) (emphasis added).  Federal Defendants are clearly not a passive actor in this process, and need to coordinate with the relevant SMAs (who are required to respond to BLM) to determine the status of any SMA concurrence reviews.

This is echoed by the USFS own leasing analysis regulations, which require that in making leasing decision for specific lands, the "Regional Forester *shall* review the area or Forest-wide leasing decision and *shall* authorize the Bureau of Land Management to offer specific lands for lease subject to" verifying NEPA requirements have been met.  36 C.F.R. § 228.102 (emphasis added).  It is clear that the USFS must respond to BLM on nominated lands submitted for its review.

This close working relationship between BLM and SMAs is further reflected in BLM's recent IM 2023-010 (Oil and Gas Leasing – Land Use Planning and Lease Parcel Reviews), which explicitly recognizes that BLM and the USFS work jointly in many instances on preparing lands for leasing in split-estate scenarios.  See https://www.blm.gov/policy/im-2023-010 at FN2.  IM 2023-010 contemplates that for "split estate lands within National Forest System units, the necessary NEPA analysis for a leasing decision may be done through documentation prepared jointly by the Forest Service (FS) and the BLM or prepared by the FS and adopted by the BLM." *Id.* at FN3.

Thus it is clear that BLM's planning process for meeting its statutory obligation to conduct quarterly lease sales includes a defined role to coordinate with relevant SMAs to determine the status of nominated lands, in some cases going so far as to jointly prepare NEPA documentation. To comply with this Court's orders, Federal Defendants must include in their status report current and complete information on relevant nominated lands, including those parcels that may currently

8

be under review by SMAs. The fact that those parcels are under review by SMAs does not remove them from either the jurisdiction of BLM or this Court, nor does requiring BLM to simply disclose to the Court and North Dakota what it knows about the status of these parcels does not require this Court to exercise jurisdiction over these SMAs. It is simply not credible for BLM to claim that it has no information on the status of these parcels simply because SMAs are involved in the review process.

At a minimum, Federal Defendants must describe what steps they have taken to confer with the relevant SMAs, what actions the SMAs are taking, and what is the status of the process and projected schedule, and what actions BLM is taking with respect to those parcels to meet its statutory obligations with respect to quarterly lease sales.

For the foregoing reasons, the conferral ordered by this Court did not satisfy North Dakota's concerns over the Federal Defendants' application of IM 2023-008. North Dakota respectfully ask this Court to Order Federal Defendants to:

1. Provide updates on the status of North Dakota's 22 remaining "High Priority" parcels, including the 11 parcels on which Federal Defendants have taken no action since 1/27/21, the 6 parcels listed as "Unavailable: Other – see comments" with no additional explanation, the 2 parcels with very broad expected completion dates of the availability and eligibility analyses, and the 3 parcels in SMA review; and

2. In all future status reports, provide the current concurrence status with non-Interior SMAs on parcels awaiting any stage of SMA review, including Federal Defendants efforts to reach out to the SMAs to determine when availability and eligibility reviews will be completed.

9

Dated:  September 14, 2023

>DREW H. WRIGLEY
>ATTORNEY GENERAL
>STATE OF NORTH DAKOTA
>
>
>/s/ *Paul M. Seby*
>Paul M. Seby
>Special Assistant Attorney General
>Greenberg Traurig, LLP
>1144 15th St, Suite 3300
>Denver, CO 80202
>Phone: (303) 572-6584
>Email: sebyp@gtlaw.com
>
>Matthew Sagsveen
>Assistant Attorney General
>Director of Natural Resources and Indian Affairs
>600 E. Boulevard Ave Dept. 125
>Bismarck ND 58505
>Phone: (701) 328-2595
>Email: masagsve@nd.gov
>
>COUNSEL FOR PLAINTIFF
>STATE OF NORTH DAKOTA

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 14th day of September 2023, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on the Federal Defendants.

*/s/ Paul Seby*