UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| STATE OF NORTH DAKOTA,           )<br>                                                       )<br>Plaintiff,                                   )<br>                                                       )<br>v.                                               )<br>                                                       )<br>THE UNITED STATES DEPARTMENT OF )<br>INTERIOR; DEBRA ANN HAALAND, in her )<br>official capacity as Secretary of Interior; THE )<br>BUREAU OF LAND MANAGEMENT;       )<br>TRACY STONE MANNING, in her official<br>capacity as acting Director of the Bureau of<br>Land Management; and SONYA GERMANN,<br>in her official capacity as the Director of the<br>Montana-Dakotas Bureau of Land Management<br><br>Federal Defendants.<br><br>And<br><br>CENTER FOR BIOLOGICAL DIVERSITY;<br>SIERRA CLUB; WESTERN<br>ORGANIZATION OF RESOURCE<br>COUNCILS; and DAKOTA RESOURCE<br>COUNCIL,<br><br>Intervenor-Defendants | Lead Case No. 1:21-cv-00148<br>(Consolidated Case No. 1:23-cv-00004) |

**THE STATE OF NORTH DAKOTA'S RESPONSE TO THE FEDERAL DEFENDANTS' SEPTEMBER 29, 2023 (ECF NO. 130) AND OCTOBER 6, 2023 (ECF NO. 131) STATUS REPORTS**

The State of North Dakota ("State" or "North Dakota") respectfully submits this Response to the Federal Defendants' September 29, 2023 Status Report (ECF No. 130) ("September 29 Status Report") and Federal Defendants' October 6, 2023 Status Report (ECF No. 131) ("October 6 Status Report").

**I. Federal Defendants' Status Reports Do Not Comply With This Court's Existing Preliminary Injunction And Clarifying Orders.**

Instead of complying with the direction in this Court's Order Granting, in Part, and Denying, in Part, North Dakota's Motion for Preliminary Injunction ("Preliminary Injunction", ECF No. 98) (and subsequent Orders clarifying the same), at each stage of this case Federal Defendants have read this Court's prior Orders in an unduly narrow fashion, each time requiring correction from the Court. Federal Defendants' latest objections in their September 29 Status Report and October 6 Status Report continue their resistance to the Court's Orders, ignoring this Court's admonitions that Federal Defendants "read the Orders in their most liberal form and accordingly provide the Court with the requested data" (Order Setting Deadlines, ECF No. 125 "Deadline Order") in order to determine if Federal Defendants are meeting their mandatory duty to hold quarterly lease sales and timely plan for and act on parcels nominated for inclusion in those mandatory sales. *See NASCO, Inc. v. Calcasieu Television & Radio, Inc.,* 583 F. Supp. 115, 120 (W.D. La. 1984) (""A party's compliance with a court order cannot be avoided by 'a literal or hypertechnical reading of an order', for it is 'the spirit and purpose of the injunction, not merely its precise words, that must be obeyed.'")

Contrary to Federal Defendants' claims, North Dakota is not seeking "immediate judicial relief in the form of further modifications of the existing preliminary injunction orders" in this action. ECF No. 130 at 4. Instead, North Dakota is simply seeking to have Federal Defendants comply with this Court's Orders, including: the Court's Preliminary Injunction requiring Federal Defendants to halt their "unlawful policy to disregard their statutory duty to appropriately plan for and complete their determination of whether nominated land was 'available' and 'eligible' on a timely, quarterly basis" (ECF No. 98 at ¶ 147); the Court's subsequent Order to Revise Status Report ("Order to Revise", ECF No. 105) requiring Federal Defendants to "to file a report

2

'detailing which lands in North Dakota have been nominated . . . (both those deferred from prior quarters and those newly nominated)'" (*Id.* at 3, FN 2); and the Court's most recent Order Setting Deadlines ("Deadline Order", ECF No. 125) requiring Federal Defendants "to read the [Court's prior] Orders in their most liberal form and accordingly provide the Court with the requested data (Doc. No. 105), understanding Congress mandated '[l]ease sales shall be held . . . where eligible lands are available at least quarterly'" (*Id.* at ¶ 5).

Since the issuance of the Preliminary Injunction, this Court's position has been clear: Federal Defendants are to update the Court and North Dakota as to "which lands in North Dakota have been nominated for inclusion in the quarterly lease sale (*both those deferred from prior quarters* and those newly nominated) and which stage of review those parcels have completed" (ECF No. 98 at ¶ 150 (emphasis added)), so that North Dakota and this Court can assess whether Federal Defendants have complied with their "mandatory statutory duty to plan for and timely complete those analyses so lands may become parcels if they meet the proper criteria" (ECF No. 125 at ¶ 5).

Despite this unambiguous direction from the Court, Federal Defendants continue to claim that paragraph 2(b) of the Court's Order to Revise only requires Federal Defendants to update North Dakota and the Court on the status of long pending nominated parcels if their NFLSS status changed on or after January 27, 2021, attempting to arbitrarily exclude from this Court's review nominated parcels that have been pending since before that date and on which BLM continues to refuse to take action. This is simply a continuation by BLM of their "stop" of the quarterly oil and gas leasing process that this Court has declared unlawful.

The Court's Order to Revise does not limit BLM's reporting obligations to parcels whose status has changed since January 27, 2021, and eliminating that limit unilaterally selected by BLM

3

will not "greatly expand the scope" of the Order to Revise.  September 29 Status Report at 4-5.  Paragraph 2, subsections (c) through (g) requires Federal Defendants to also provide information on "[w]hich parcels are anticipated to be part of the relevant upcoming quarterly lease sale in North Dakota"; "[t]he reasoning and basis for already assigning certain parcels in the NFLSS for potential leasing in September 2023 and December 2023"; and to identify "[a]mong the Federal Defendants . . . the person or persons who could provide the Court with the most information related to . . . [t]he exact stage of adjudication of "Pending" Nominated Lands."  ECF No. 105 at ¶ 2(c)-(g).  Thus Federal Defendants' reporting obligations are not limited by BLM's hyper technical reading of the Court's Order to Revise, made without the context of the Preliminary Injunction.

Federal Defendants' incorrect and narrow reading of the Court's Order to Revise would relieve them of the duty to "plan for and timely complete" availability analyses for nominated parcels long pending for inclusion in the mandatory quarterly lease sales by the sole fact of Federal Defendants' failure to act on them since North Dakota brought these combined actions (e.g. Federal Defendants have made no change to the NFLSS status of those long pending lands since January 27, 2021).[1]  Thus BLM seeks to use its own inaction to justify its effort to evade this Court's scrutiny of BLM's failure to comply with its statutory obligations.

First, these long pending nominated, but unacted upon, parcels clearly have a "plausible connection to the challenged post-2020 agency actions."  September 29 Status Report, ECF No. 130 at 4.  North Dakota's chief complaint in bringing this action was that Federal Defendants were

---

[1] As evidenced by the Federal Defendants' July 27 Status Report and supporting exhibits (*See* ECF No. 120-2 (Exhibit A to Samantha Ironshirt's Declaration (ECF No. 120-1), there are 384 parcels whose NFLSS status has not changed since January 27, 2021, which represent ~56% of the 687 long pending parcels.

4

failing to plan for and to timely act on long pending parcels by cancelling multiple quarterly oil and gas lease sales in 2021 and 2022. These long pending nominated parcels *are* a significant portion of the parcels Federal Defendants were failing to act on, and are encompassed by the Court's Orders.

Second, because these long pending nominated parcels are a part of North Dakota's case and covered by this Court's Orders, Federal Defendants' references to *Lujan v. Nat'l Wildlife Federation,* 497 U.S. 871, 890–894 (1990) and *Norton v. S. Utah Wilderness All.,* 542 U.S. 55, 65–66 (2004) fall short. North Dakota is not seeking a "wholesale improvement of th[e quarterly oil and gas leasing] program" which must be brought "in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." *National Wildlife Federation*, 497 U.S. at 891. North Dakota has simply challenged the Federal Defendants' "concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him" (*National Wildlife Federation*, 497 U.S. at 891). All of the long pending nominated parcels for which North Dakota seeks compliance with this Court's Orders (by BLM providing information confirming BLM is timely planning for and acting on those previously "stopped" parcels) are a part of that concrete interest. This is not a request that Federal Defendants take any specific action on those long pending parcels, but it is a request that Federal Defendants prove they are complying with their statutory duty to timely plan for and act on the long pending parcels. *See Norton v. S. Utah Wilderness All.,* 542 U.S. at 65 ("[W]hen an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be."). Thus BLM seeks to use its own inaction to justify its effort to evade this Court's scrutiny

of BLM's on more than 50% of the nominated parcels long pending for inclusion in the mandatory quarterly lease sales.

## II. This Court's Orders Require Federal Defendants To Provide The Conferral Status Of Parcels In The Concurrence Process With Surface Management Agencies.

As set forth above, this Court's Orders direct Federal Defendants to provide more information on their efforts to timely plan for and act on long pending nominated parcels. A vast subset of those long pending parcels are the 433 parcels "Pending SMA Concurrence" and 34 parcels "Pending NEPA" (by Federal Defendants' own count in their July 27 Status Report). *See* ECF No. 120-2.

Federal Defendants have refused to provide any more data on the status of nominated lands that are "Pending SMA Concurrence" and "Pending NEPA," claiming that these lands and the SMAs such as the U.S. Forest Service ("USFS") and Army Corps of Engineers ("Corps") that are coordinating with Federal Defendants, are (1) not subject to the Court's jurisdiction as non-parties; (2) that the USFS and Corps are not bound by the Department of Interior's regulations; (3) that conferring with those agencies would be "incredibly burdensome"; and finally (4) that North Dakota has alternate means of seeking this information. September 29 Status Report, ECF No. 130 at 8-10. These arguments all fall short.

First, as noted in North Dakota's September 14 Status Report (ECF No. 129), North Dakota is not seeking jurisdiction over the USFS or Corps, but merely asking Federal Defendants to report on their conferral status those non-party SMAs. Federal Defendants cannot ignore this Court's Orders requiring Federal Defendants to report on the status of BLM-managed lands simply because those parcels are currently being review by the USFS or Corps (or any other non-Interior SMA). SMA reviews are a necessary and integral part of BLM's quarterly lease sale planning process, and BLM does not relinquish its obligations and authority over BLM managed minerals, nor does

6

this Court lose its jurisdictions over those BLM parcels, by dint of SMA reviews. The fact that the SMAs are not parties to this litigation does not relieve Federal Defendants of their obligation to update this Court and North Dakota on the status of BLM's planning process just because that process includes SMAs. It also does not mean that this Court is exercising jurisdiction over non-party SMAs: rather, BLM is simply obligated to tell this Court and North Dakota what it knows and is doing about the status of BLM lands nominated for leasing, including the status of any relevant SMA reviews.

Second, obligating BLM to provide the Court this information is not somehow "binding" the non-party USFS and Corps SMAs to the Department of Interior's regulations. Again, North Dakota is only asking Federal Defendants to report on the information they already *should* have if they are complying with their statutory duty to timely plan for and act on long pending nominated parcels.

Third, Federal Defendants' argument that further conferral with SMA's would be "incredibly burdensome" (September 29 Status Report, ECF No. 130 at 9) because "BLM does not have a system for tracking the status of concurrence or consent requests with SMAs" (Gamper Declaration, ECF No. 130-1 at ¶ 4) only highlights that Federal Defendants are not adequately planning the activities necessary to hold quarterly lease sales as required by statute and this Court's Orders.

This Court held that Federal Defendants have a "congressional mandate to timely evaluate whether lands meet the leasing requirements in § 226(b)(1)(A)." ECF No. 98 at ¶ 83. This includes ""*plan*[*ning*] the activities necessary to have eligible lands available for sale." *Id.* at ¶86 (emphasis in original). This Court also held that SMAs have a role in Federal Defendants' timely planning for eligible lands to be available for sale, including regulations "requiring the relevant SMA to (1)

7

verify the specific parcel has been properly analyzed for NEPA purposes and (2) issue a recommendation to lease (or not lease) the parcel, which then BLM has to review and 'accept' when 'reasonable.'" ECF No. 98 at ¶ 71 (citing to 43 C.F.R. § 3101.7-2(c) and 36 C.F.R. § 228.102(e). Gamper's Declaration is essentially an admission that BLM is not complying with its statutory planning obligations.

Thus it is clear that BLM's planning process for meeting its statutory obligation to conduct quarterly lease sales includes a defined role to coordinate with relevant SMAs to determine the status of nominated lands, in some cases going so far as to jointly prepare NEPA documentation. To comply with this Court's Orders, Federal Defendants must include in their status report current and complete information on relevant nominated lands, including those parcels that may currently be under review by SMAs. The fact that those parcels are under review by SMAs does not remove them from either the jurisdiction of BLM or this Court, nor does requiring BLM to simply disclose what it knows about the status of these parcels require this Court to exercise jurisdiction over these SMAs. It is not credible for BLM to claim that it has no information on the status of these parcels simply because SMAs are involved in BLM's statutory review process.

Federal Defendants are clearly not a passive actor in this process, and need to coordinate with the relevant SMAs (who are required to respond to BLM) to determine the status of any SMA concurrence reviews.[2] While Federal Defendants admit they are not currently tracking their SMA concurrence process, they clearly should be. Thus it is immaterial if providing North Dakota and this Court SMA concurrence statuses would be "burdensome" as it is an obligation Federal

---

[2] *See* North Dakota's September 14 Status Report, ECF No. 129 at 8 (Discussing the "close working relationship between BLM and SMAs" as reflected in BLM's recent IM 2023-010 (Oil and Gas Leasing – Land Use Planning and Lease Parcel Reviews), which explicitly recognizes that BLM and the USFS work jointly in many instances on preparing lands for leasing in split-estate scenarios. *See* https://www.blm.gov/policy/im-2023-010 at FN2.

Defendants already possess under the MLA. Further, the "burden" placed on Federal Defendants is created by their own inaction and "stopping" of quarterly lease sales. Had Federal Defendants not unlawfully "stopped" the quarterly oil and gas lease sale process, there would not be such a great backlog to review and update North Dakota and this Court. Federal Defendants created this mess, and they should now be required to do the necessary work to timely plan for and act on these long languishing nominated parcels.

At a minimum, Federal Defendants must describe what steps they have taken to confer with the relevant SMAs, what actions the SMAs are taking, and what is the status of the process and projected schedule, and what actions BLM is taking with respect to those parcels to meet its statutory obligations with respect to quarterly lease sales. *See* Order to Revise, ECF No. 105 at ¶ 2(b)(ii) (Requiring Federal Defendants to provide (1) the date each Nominated Land started the NEPA or SMA Concurrence process; and (2) the date each Nominated Land is expected to complete the NEPA or SMA Concurrence process).

Fourth and finally, North Dakota does not have alternate means of seeking this information. North Dakota is seeking that Federal Defendants provide this Court an update on what efforts the *Federal Defendants* (not the SMAs) have made to "to plan for and timely complete those analyses so lands may become parcels if they meet the proper criteria" (ECF No. 125 at ¶ 5). North Dakota is not obligated, nor does it have the means, to seek alternative sources of the information Federal Defendants are in sole possession of. Information that Federal Defendants are obliged by this Court's Orders to provide demonstrating that Federal Defendants are meeting their statutory obligations.

### III. Federal Defendants' Are Capable Of Providing This Court The Information Required By Its Orders.

Federal Defendants are capable of providing the information required by this Court's Orders: they have done it before, and they can do it again. For example, North Dakota's September 14 Status Report sought additional information on the status of the 22 remaining "High Priority" parcels, including the 11 parcels on which Federal Defendants have taken no action since 1/27/21, the 6 parcels listed as "Unavailable: Other – see comments" with no additional explanation, the 2 parcels with very broad expected completion dates of the availability and eligibility analyses, and the 3 parcels in SMA review. Federal Defendants' September 29 Status Report provided some additional detail as to the status of these various parcels (despite objecting to the obligation to do so), proving they can provide the information required by this Court's Orders. *See* ECF No. 130 at 6-8.

Despite providing some additional information, Federal Defendants' September 29 Status Report still falls short on providing the required information for the High Priority parcels. For example, as to the 6 parcels listed as "Unavailable: Other – see comments", Federal Defendants now assert that the parcels did not have a continued interest pursuant to their use of IM 2023-008. September 29 Status Report at 6 (citing to ECF Nos. 109-1; 123-4). North Dakota already objected to Federal Defendants use of IM 2023-008 "as a framework for complying with their obligations established by statute and this Court's orders to take the actions necessary to conduct quarterly lease sales and transparently review the backlog of nominated parcels. In particular, Federal Defendants cannot be permitted to use IM 2023-008 to remove parcels from consideration for no other reason than that they are over three years old, especially when the nominations are over three years old for the sole reason that Federal Defendants have long failed to process these eligible parcels." ECF No. 108, North Dakota's May 19, 2023 Status Report, at 4. This violates Federal

10

Defendants' "statutory duties under the MLA to take the steps necessary to complete eligibility and availability determinations in a timely manner and this Court's order that Federal Defendants promptly and transparently undertake these reviews." *Id.* at 4-5.

The problem lies in that it is Federal Defendants' own delay in this case, as to the subject long pending parcels, that has "run out the clock" on those parcels.  Even taking as true that the specific nominator of those parcels is no longer interested in those parcels, North Dakota clearly *is interested* in those High Priority parcels due to their vicinity (and thus impairment) of leasing nearby North Dakota parcels. Yet Federal Defendants provide no explanation or basis that they examined other interest in those six parcels, hiding again behind IM 2023-008.

As to the 2 parcels with very broad expected completion dates of the availability and eligibility analyses, Federal Defendants assert that "Drainage determinations are complex processes, involving legal, geological and engineering reviews" while providing more detail on the decision-making process for making drainage determinations.  September 29 Status Report, ECF No. 130 at 6-7.  Per Merry Gamper's declaration Exhibit D (ECF No. 128-5) parcels have been pending since January 30, 2020 (MT00015999) and February 11, 2019 (MT00013519) and Further, Federal Defendants' own "Drainage Flowchart" (*See* September 29 Status Report, ECF No. 130 at 7).  As such, North Dakota disputes that a 5 to 6-year drainage determination (counting from the 2019 and 2020 nomination dates) is reasonable and complies with the Federal Defendants' obligation to "appropriately plan for and complete their determination of whether nominated land was 'available' and 'eligible' on a timely, quarterly basis."  ECF No. 98 at ¶ 147. While drainage determinations may be complex, Federal Defendants have failed to provide detail justifying why a drainage determination for these long nominated parcels should take such an excessive period of time.  Further, BLM's own Drainage Protection Manual states that "The BLM

or the BIA must lease and protect unleased Federal and Indian minerals identified as drainage cases as soon as possible."[3]

Finally, for parcel 2099-01-0228, Federal Defendants actually provide the status of their conferral process with the SMA reviewing the parcel, proving Federal Defendants are capable of updating North Dakota and this Court on the status of their conferrals. September 29 Status Report, ECF No. 130 at 7-8.

### IV. Federal Defendants' October 6 Status Report Continues To Improperly Construe The Court's Orders.

Federal Defendants' October 6 Status Report continues their same incorrect reading of this Court's Orders, continuing a pattern objected to by North Dakota and criticized by this Court. Federal Defendants submitted their report while "continu[ing] to object to that Revised Order and preserve all objections to the [Order to Revise]" (ECF No. 131 at 2), despite Federal Defendants withdrawing their appeal of the Order to Revise.  Federal Defendants are no longer seeking an appeal, nor have they received a stay of the Court's prior Orders, and are thus fully bound by them despite any objections they may reserve. *In re Timmons*, 607 F.2d 120, 125 (5th Cir. 1979) ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal."); *Pasadena City Bd. of Ed. v. Spangler*, 427 U.S. 424, 439 (1976) ("'It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.'").  For the reasons set

---

[3] BLM Drainage Protection Manual MS-3160, available at
https://www.blm.gov/sites/blm.gov/files/uploads/mediacenter_blmpolicymanual3160.pdf.

forth herein, Federal Defendants' latest October 6 Status Report fails to meet the requirement of this Court's prior Orders.

## CONCLUSION

For the foregoing reasons, the Federal Defendants are continuing to narrowly read this Court's prior Orders and are failing to provide adequate information on the status of long pending parcels in North Dakota. North Dakota respectfully asks this Court to Order Federal Defendants to:

1. Provide sufficient information for North Dakota and this Court to evaluate long pending nominated parcels whose NFLSS Status has not changed since January 27, 2021 (as required by the Court's Preliminary Injunction and subsequent clarifying Orders); and

2. In all future status reports, provide the current concurrence status with non-Interior SMAs on parcels awaiting any stage of SMA review, including Federal Defendants efforts to reach out to the SMAs to determine when availability and eligibility reviews will be completed.

Dated: October 16, 2023

DREW H. WRIGLEY
ATTORNEY GENERAL
STATE OF NORTH DAKOTA

/s/ *Paul M. Seby*
Paul M. Seby
Special Assistant Attorney General
Greenberg Traurig, LLP
1144 15th St, Suite 3300
Denver, CO 80202
Phone: (303) 572-6584
Email: sebyp@gtlaw.com

13

Matthew Sagsveen
Assistant Attorney General
Director of Natural Resources and Indian Affairs
600 E. Boulevard Ave Dept. 125
Bismarck ND 58505
Phone: (701) 328-2595
Email: masagsve@nd.gov

COUNSEL FOR PLAINTIFF
STATE OF NORTH DAKOTA

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 16th day of October 2023, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on the Federal Defendants.

                                                           */s/ Paul Seby*