# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| State of North Dakota, | ) |
| Plaintiff, | ) |
| vs. | ) **ORDER GRANTING IN PART** |
| | ) **AND DENYING IN PART** |
| The United States Department of Interior; Debra Ann Haaland, in her official capacity as Secretary of Interior; the Bureau of Land Management; Nada Culver, in her official capacity as acting Director of the Bureau of Land Management; and John Mehlhoff, in his official capacity as the acting Director of the Montana-Dakotas Bureau of Land Management, | ) **REQUEST FOR PRODUCTION** |
| | ) Case No. 1:21-cv-148 |
| Defendants. | ) |
| Center for Biological Diversity; Sierra Club; Western Organization of Resource Councils; and Dakota Resource Council, | ) |
| Defendant-Intervenors. | ) |
| State of North Dakota, | ) |
| Plaintiff, | ) |
| vs. | ) |
| The United States Department of Interior; Debra Ann Haaland, in her official capacity as Secretary of Interior; the Bureau of Land Management; Tracy Stone Manning, in her official capacity as the Director of the Bureau of Land Management; and Sonya Germann, in her official capacity as the Director of the Montana- Dakotas Bureau of Land Management, | ) |
| Defendants. | ) |

1

Before the Court is a "Notice of Decision in Related Case and Request for Production and Identification Following February 9, 2024, Status Conference" filed by the Plaintiff (hereafter referred to as "the State" or "North Dakota") on April 12, 2024. (Doc. Nos. 146 and 149). On April 29, the Federal Defendants filed a response in opposition to the State's motion. (Doc. No. 152). On May 6, 2024, the State filed its reply. (Doc. No. 154).

The Court referred to this matter to the undersigned. Having now reviewed the Parties' filings, the undersigned grants in part and denies in part the State's motion for the reasons articulated below.

## I.  BACKGROUND

On March 27, 2023, the Court granted in part and denied in part the State's motion for a preliminary injunction and directed the federal Bureau of Land Management ("BLM") to make eligibility and availability determinations in time for quarterly lease sales and to hold lease sales when parcels are eligible and available. (Doc. No. 98 at ¶ 147). It also directed the Parties to appear in person for quarterly status conferences and to file reports in advance of these conferences "detailing which lands in North Dakota have been nominated for inclusion in the quarterly lease sale (both those deferred from prior quarters and those newly nominated) and which stage of review those parcels have completed." (Id. at ¶ 150).

The Court convened its first status conference with the parties on April 24, 2023. (Doc. No. 122). The Court initially provided some clarification regarding the term "deferred" as used in its March 27, 2023, order and its expectations regarding status reports. (Doc. No. 122, 6:7-7:24). The Court then proceeded to question defense counsel about BLM's adjudication process. See e.g., id. at 8:4-9:25. Perhaps frustrated by some of counsel's responses, the Court directed the Federal

Defendants to identify a person with knowledge of the adjudication process that could be compelled to appear at a future status conference and testify under oath. See id. at 9:9-11:8, 11:13-11:22, 12:16-12:19, 18. It memorialized this directive in an order issued on April 25, 2023. (Doc. No. 105).

The Federal Defendants subsequently designated Samantha Iron Shirt, Branch Chief for Fluid Minerals Adjudication in BLM's Montana-Dakotas state office, as the person most capable of answering the Court's questions. (Doc. No. 120).

Ms. Iron Shirt appeared at a status conference on February 9, 2024, and submitted to an examination by the State. During the course of this examination either she or defense counsel identified documentation relevant to the State's questions. She also answered the State's questions to the extent of her knowledge. However, she was unable to answer all of the State's questions due to her admitted lack of knowledge in some areas. When asked who could at BLM could answer the questions that she could not, she identified five officials: Sonya Germann, Andrew Gibbs, Hattie Payn, Tessa Wallace, and Carol Moore.

On March 12, 2024, the State filed the instant request for the production of documents referenced by Ms. Iron Shirt and/or counsel and the identification of witnesses who could answer questions that Ms. Iron Shirt could not. (Doc. No. 146). Specifically, the State requested the production of the following documentation:

(1) any documentation demonstrating the State Director's exercise of discretion to select parcels for inclusion, or remove parcels from, quarterly lease sales;

(2) the Memorandum of Understanding ("MOU") between the Bureau of Land Management ("BLM") and the United States Forest Service ("USFS") regarding how

3

    the Surface Management Agency ("SMA") National Environmental Protection Act ("NEPA") reviews are coordinated for quarterly oil and gas lease sales, with specificity to the Montana-Dakota's quarterly lease sales;

(3)  any email communications and/or confirmations regarding BLM's transmittal of nominated parcels needing SMA NEPA Reviews for parcels located in North Dakota regarding consideration of the March 2021 quarterly lease sale through the present;

(4)  spreadsheets or other communications shared with SMAs documenting which parcels were nominated or pending and awaiting SMA NEPA reviews in North Dakota regarding the March 2021 quarterly lease sale through the present; and

(5)  communications with SMAs regarding processing the backlog of parcels needing NEPA Reviews in North Dakota regarding the March 2021 quarterly lease sale through the present.

It also requested the disclosure of BLM officials best situated to speak on the following topics:

(1)  the exercise of State Director discretion to select parcels for inclusion, or remove parcels from, quarterly lease sales, disclose if Sonya Germann, or another BLM witness is best situated to speak to this topic;

(2)  how BLM tracks NEPA evaluations for pending parcels, including parcels under SMA reviews, disclose if Andrew Gibbs, Hattie Payn, Tessa Wallace, or another BLM is best situated to speak to this topic; and

(3)  if BLM is considering North Dakota's identification of "High Priority," parcels, disclose if Carol Moore or another BLM witness is best situated to speak to this topic.

(Doc. No. 146).

On April 29, 2024, the Federal Defendants filed a response in opposition to the State's requests. First, they asserted the State failed to comply with D.N.D. Civ. L.R. 37.1, which requires the parties to confer amongst themselves and thereafter participate in a telephonic conference before filing discovery motions. Second, they assert that information regarding the State Director's exercise of discretion in removing parcels from sales is well documented on the BLM's publicly available e-planning site. Third, they assert that the MOU sought by the State is publicly available and therefore easily accessible. Fourth, they assert that the remaining document requests are ambiguous, overbroad, unduly burdensome, and largely unnecessary as most of the requested documentation is already contained in/incorporated into status reports filed with the court. Finally, with respect to the request for the identities of witnesses knowledgeable about the identified topics, it asserts that identified topics are not appropriate for witness testimony.

On May 6, 2024, the State filed its reply. It takes exception to the Federal Defendants' characterization of this matter as a discovery dispute. In so doing, it asserts that its requests were not made with the intent of obtaining information about its underlying claims but rather to assess the Federal Defendants compliance with the Court's preliminary injunction. It further notes that the court's power to modify an injunction necessarily includes the power to clarify the injunction and to supervise compliance. See Meinhold v. U.S Dep't of Def., 34 F.3d 1469, 1480 n. 14 (9th Cir. 1994).

## II.     DISCUSSION

### A.     D.N.D. Civ. L. R. Rule 37.1

The State's assertion, that the matter presently at issue is not a discovery dispute, is specious.

By any definition, what the State seeks–information related to the instant litigation–can be considered discovery. See e.g., Black's Law Dictionary (12th ed. 2024) (defining discovery as "1. The act or process of finding or learning something that was previously unknown . . . 2. Compulsory disclosure, at a party's request, of information that relates to the litigation . . . ."). It does not appear to have conferred with the Federal Defendants prior to filing its motion. It certainly did not meet and confer with the undersigned. Consequently, it did not fulfill the Rule 37 requirements prior to filings its request for the production of documents and identification of witnesses.

The Federal Defendants concern over the expenditure of judicial resources rings a bit hollow, however. Regardless of the present dispute, this case has been and will continue to consume extensive judicial resources given its complexities and the quarterly status conferences with the parties that the Court has determined are necessary to ensure that the Federal Defendants remain attentive to their obligations. The present dispute and the resources it is consuming is a mere drop in what is well on its way to becoming a swimming pool.

Having reviewed the record, the undersigned is not inclined to strike the State's requests or otherwise deny its motion on procedural grounds. Rather, the undersigned finds that requiring the Parties to meet and confer about the matter presently in dispute would be an exercise in futility as the undersigned has zero confidence in the Parties' ability resolve this matter informally and without an order from the Court. After all, the Parties are meeting and conferring with each other and the Court at quarterly status conferences and have to date been unwilling or unable to sort this matter out. To deny the State's motion on procedural grounds at this point would only serve to postpone what seems to be the inevitable–the State's refiling of its motion weeks or perhaps months from now. If the motion were to be denied for failure to fulfill the requirements of Rule 37, the Parties

6

would go back to the "drawing board"and meet with each other, then in all likelihood request a meeting with the undersigned, and then in all likelihood seek leave to re-file their respective motion and briefs in whole or in part.

Accordingly, the undersigned shall, in the exercise of its discretion, waive the requirements of Rule 37 in this instance and proceed with a review of the State's motion as the briefing of it has already been completed. However, going forward, discovery motions filed without the Court's prior permission shall be summarily dismissed on the date they are filed.

### B.  Requests for Production

#### 1.  Documents Demonstrating How The State Director Exercised Her Discretion

The Federal Defendants maintain that information regarding the State Director's exercise of discretion is well-documented, publicly available on its e-planning site. They point out that Ms. Iron Shirt stated as much at the February 9, 2024, status conference. They also point to the Findings of No Significant Impact ("FONSI") for the December 2023, September 2023, and June 2023 lease sales.

The States avers that the FONSI provides little more than the information that what was already contained in the prior status reports–that certain parcels were removed for lack of interest. More specifically, they assert that the FONSI is devoid of any information as to why or how the State Director came to the conclusion that there was a lack of interest in these parcels.

At this point, the undersigned is inclined to require the Federal Defendants to produce the information on which the State Director relied when exercising her discretion to remove certain parcels. It would appear that this information is well-documented. Consequently, the production of it should not be a heavy lift for the Federal Defendants.

### 2. MOU

By all accounts the State is now in possession of the MOU. Consequently, its request for production of the MOU is denied as moot.

### 3. Remaining Document Requests

The State's remaining document requests pertain to what it describes as "SMA NEPA Reviews." The Federal Defendants assert these matters are unripe for judicial intervention for the following four reasons. First, not only did the State fail to request these documents prior to filing the instant motion, but their request is ambiguous given that the "the SMA concurrence process (managed at BLM by the adjudication team) and the NEPA evaluation process are distinct processes managed by separate teams and tracked by two different systems." (Doc. No. 152 at p. 10). Second, most of this information being sought is contained in their status reports. Third, the State's request is overbroad as it encompasses the production of information that have already gone through the quarterly lease sale process. Finally, the requested production is unduly burdensome in that it would involve privilege reviews by nonparty agencies.

> Throughout this litigation, Plaintiff has repeatedly complained about the backlog of Forest Service parcels in pending SMA Concurrence status. Plaintiff now seeks to compel BLM to produce communications from the nonparty Forest Service about this backlog. But BLM should not face the undue burden of managing a document review for another agency's privileges, when Plaintiff can directly request those documents form the Forest Service under the Freedom of Information Act. As noted above, the Federal Defendants object to the remaining requests on the grounds of overbreadth, undue burden, or lack of ripeness.

(Doc. No. 152 at p. 11).

Not surprisingly, the State takes issue with the Federal Defendants' response. In so doing, it asserts that the Federal Defendants to date have not provided BLM's communications with SMAs in regards to processing the backlog of parcels needing NEPA reviews in North Dakota. It is also

dismissive of the Federal Defendants objection to the production of information regarding parcels that have already gone through the lease sale process as "BLM has been required to provide this information to the Court since the entry of the Preliminary Injunction on March 27, 2024." (Doc. No. 154 at p. 8). As for the issue of privilege, it questions whether BLM communications administratively following up on the status of parcel reviews would be privileged. Additionally, it asserts what "the USFS is a non-party, providing this information is within the Court's powers to supervise compliance with the Preliminary Injunction entered in this matter." Id. Finally, it asserts that it would be unduly burdened if "required to submit Freedom of Information Act requests to the [United States Forest Service] for information that is under BLM's direct control and is relevant to BLM's compliance with the existing Preliminary Injunction." Id.

If it has not already, the Federal Defendants shall produce to the State BLM communications and documentation that triggered or initiated the SMA concurrence process and the NEPA evaluation for parcels located in North Dakota regarding consideration of the March 2021 quarterly lease sale through the present. It shall also produce any communication/inquiries it sent to SMA regarding the status of parcels awaiting review. This may result in a modicum of duplication fo what has already been provided. However, the undersigned is not persuaded that this is particularly burdensome. It need not produce responsive communications from the United States Forest Service. If the State requires communications from the United States Forest Service that are responsive to BLM's communications or otherwise, it can file an appropriate Freedom of Information Act request. The undersigned appreciates that this place a burden on the State. However, it would be equally if not more burdensome to require the Federal Defendants to manage the document review of a nonparty agency's claimed privileges. Given the possibility that the State may take issue with any

9

claims of privilege asserted by the United States Forest Service, it is best that it deal directly with the United States Forest Service.

### C. Identification of Witnesses

As noted above, the State seeks the identification of witnesses best situated to address the following topics--the State Director's exercise of discretion in removing parcels from lease sales, how BLM tracks NEPA evaluations, and whether BLM is considering North Dakota's identification of "High Priority" parcels–are not appropriate for witness testimony.

In response, the Federal Defendants assert that the first two topics are not appropriate for witness testimony. Specifically, with respect to the first two topics, they assert the relevant administrative processes are already extensively documented on BLM's e-planning site, information regarding BLM's tracking of NEPA evaluations is available via BLM's public NEPA register, and that the State must first look to these two sources of information which it has heretofore failed to do. It further avers that the State is endeavoring to improperly obtain information about post-filing actions outside the Court's jurisdiction.

As for the third topic, relying in part on the Court's prior order denying the State's motion to Complete the Administrative Record (Doc. No. 56, "Record Order"), the Federal Defendants asserts that witness testimony is not only out-of bounds from a jurisdictional perspective, but would otherwise improperly intrude upon its deliberative process privilege. See Coastal States Gas corp v. Dep't of Energy, 617 F.3d 854, 866 (D.C. Cir. 1980); accord State of Mo. Ex rel. Shorr v. U.S. Army Corps of Engineers, 147 F.3d 708, 710 (8th Cir. 1998).

In its reply, the State withdraws its request for the identity of witnesses who can speak to third topic it identified in its motion. As for the other two topics, it asserts that this case has evolved

10

substantially since the Court issued the Record Order. It further asserts that the Court has the authority to supervise and confirm Defendants' compliance with its preliminary injunction order, which postdates its Record Order, and direct BLM witnesses to appear and explain the substance of the Federal Defendants' status reports.

The court shall deny as moot the State's request as it pertains to Topic Three as it has been withdrawn. As for the Topics One and Two, the undersigned denies the Federal Defendants' request. In the course of examination on February 9, 2024, Ms. Iron Shirt identified others at BLM who could speak to these two topics. This will at present suffice. It is ultimately the Court's call as to whether to allow/require testimony from witnesses about these topics. The Court may very well have questions it wants answered and be inclined to compel others from BLM to appear and answer them. Stay tuned.

In the interim, the State arguably has what it wants, i.e., the names of individuals who could perhaps be compelled by the Court to fill in any blanks left after Iron Shirt's testimony and otherwise answer questions the Court may have.

## III. CONCLUSION

The State's request (Doc. No. 149) is **GRANTED IN PART AND DENIED IN PART**. The Federal Defendants need not identify any additional witnesses who can speak to the topics listed by the State. The Federal Defendants need only produce the following. The Federal Defendants shall produce documents demonstrating how the State Director exercised her discretion. The Federal Defendants shall also produce BLM communications and documentation that triggered or initiated the SMA concurrence process and the NEPA evaluation for parcels located in North Dakota regarding consideration of the March 2021 quarterly lease sale through the present. Finally, it shall

also produce any communication/inquiries it sent to SMAs regarding the status of parcels awaiting review.  This production shall occur by August 19, 2024, or one day prior to the Parties' next status conference.

    **IT IS SO ORDERED.**

    Dated this 12th day of August, 2024.

<div style="text-align:right;">

<u>/s/ Clare R. Hochhalter</u>
Clare R. Hochhalter, Magistrate Judge
United States District Court

</div>